## FERGUSON v. DAVIS COUNTY.

1. **Board of Supervisors**: CLAIM FOR UNLIQUIDATED DAMAGES: PROOF. The presentation of a claim for unliquidated damages against a county, to the board of supervisors, and demand for payment, may be proved by the person presenting it.

2. **County Bridges**: EXPERT TESTIMONY. The evidence of an expert, a bridge-builder, as to the average length of time white-oak timber would last in a bridge was properly admitted. Such facts should not be left to be inferred by the jury without proof.

3. **Evidence**: EXPERT: COMPETENCY OF WITNESS. It is not necessary that a person be a medical expert before he can testify that his ribs were fractured. Any person who knows a fact may testify in regard to it.

4. ———: DECLARATIONS OF PERSON INJURED. In an action for personal injuries the declarations of the person injured, made after convalescence, as to the condition of his health and the pain he experienced, are not admissible.

5. **County Bridges**: ADOPTION OF PLAN: NEGLIGENCE. A county cannot carelessly and negligently adopt an insufficient plan for a bridge, and escape liability for damages resulting from the insufficiency of the plan. The county should exercise reasonable care in the adoption of a plan for a public bridge.

6. **Compensatory Damages**: MENTAL SUFFERING. In an action for personal injuries mental suffering, arising from actual physical injury inflicted, may properly be considered in estimating compensatory damages.

7. **Bridges**: DEFECTIVE: NOTICE: LIABILITY. Where a county was not negligent in the construction of a bridge, it will not be liable for an injury resulting from the same becoming defective and out of repair, unless it had notice or knowledge thereof, or unless the defect was so notorious that not to know of it was negligence.

8. ———: ———: FAILURE TO REPAIR. Where the county had knowledge, or, in the exercise of reasonable prudence, had reason to know that a bridge was defective, and failed to repair it, or to prevent the public from using it, it is liable for any injury resulting therefrom.

9. ——: INSPECTION OF: NEGLIGENCE. The failure t of the board of supervisors to inspect bridges, or to appoint some competent person to do so, as frequently as men of ordinary prudence would deem necessary, was negligence that would render the county lial 'e for any injury caused by a defective bridge.

10. ——: BOARD OF SUPERVISORS: NOTICE OF DEF          Where the board of supervisors had been informed of the dan|          condition of the bridge, and had failed to examine or repair it, it w...s negligence although the bridge had been examined two and one-half years before, and reported reasonably safe for about four years.

11. ——: ——: KNOWLEDGE OF DEFECT. The facts that the bridge had been out of repair for seven or eight months, and was old, and that the county took no measures to examine or repair it, will not constitute negligence, unless some member of the board knew, or had reason to know, that it was unsafe.

## Appeal from Davis District Court.

### TUESDAY, DECEMBER 20.

THIS is an action to recover damages for injuries sustained by the falling of a portion of a county bridge of defendant, over which the plaintiff was passing. There was a jury trial, resulting in a verdict for plaintiff for $2,000. The defendant appeals. The material facts are stated in the opinion.

*Payne & Eichelberger*, for appellant.

*Trimble, Carruthers & Trimble* and *M. H. Jones & Son*, for appellee.·

DAY, J.—The bridge in question was constructed by Davis county over Fox River, in 1863. The bridge was built entirely of oak timber, and was constructed of a span of about forty feet, with an apron on each side about fourteen feet wide, and was about sixteen feet above the bed of the stream. The accident of which the plaintiff complains occurred on the 10th day of June, 1875. · At that time the timbers of the bridge were badly rotted. As the plaintiff was crossing over the bridge in a funeral procession, in a two-horse wagon, in which

were five persons besides himself, a joist-beam broke off at both ends, leaving about twenty-four feet of joist and floor without support, and precipitating the team and wagon, and the persons therein, to the ground beneath, a distance of about sixteen feet, whereby the plaintiff sustained injuries for which he sues.

I.   This action was commenced on the 3d day of February, 1876.   At the September term, 1875, of the board of super-

1. BOARD of supervisors: claim for un-liquidated damages: proof.

visors, M. H. Jones, one of the attorneys of the plaintiff, presented plaintiff's claim for damages, and asked the board to act upon it.   It is insisted by the appellant that the testimony of Jones is incompetent to prove the presentation of the claim, and that the presentation, filing, and action of the board on the claim must be made of record.   We are clearly of opinion that the presentation of the claim may be proved by the testimony of the person who presented it.   The board could not defeat the claim by refusing or neglecting to make any record of its presentation.   Section 2610 of the Code simply provides that no action shall be brought against a county on an unliquidated demand until the same has been presented to the board of supervisors and payment demaded.   It is not required as a condition precedent to the bringing of an action that the board shall act upon the claim.   The board, by refusing to act or to make any record of their action, cannot deprive a party of the right to maintain an action.   All that the party needs to do is to present his claim, and give the board a reasonable time to act.   See *White v. Polk County*, 17 Iowa, 413.   The plaintiff in this action gave the board from September to the following February, which certainly was a reasonable time.   If the defendant acted upon and allowed the claim, it is a very easy matter for it to show that fact in defense.   It is idle, however, to claim that the board may have allowed the demand, in view of the defense which the county is making.   In our opinion the proof of the presentation of the claim, and demand of

payment, is sufficient to authorize the maintenance of this action.

II. One S. C. Bradley, who was a bridge-builder, and had considerable experience with white-oak timber, was introduced as a witness by plaintiff, and asked the following question: "Will you state about what would be the average life of timber—white-oak timber—in a bridge?" The defendant objected to this question as not a question for an expert, but a matter of common observation. The objection was overruled. The witness answered as follows: "The age runs from seven to twelve years, but as a general thing they become unsafe at eight or nine years. Some timbers will last twenty years, while others would not last more than five or six years." The action of the court in admitting this testimony is assigned as error. It is claimed that the life of timber is a matter of common observation, and that any farmer can give as good a guess on this question as a bridge-builder, carpenter, or any one else. It must be admitted, however, that the life of white-oak timber in a bridge is a matter which does not come under the observation of every one. And if it should even be conceded that farmers possess as much knowledge upon the question as a bridge-builder or carpenter, still there is no proof that the jury in this case was composed wholly or even partially of farmers. Conceding that the knowledge is such as may be acquired by observation, yet the matter is one which all persons do not have the inclination nor the opportunity to observe. It cannot be doubted that upon almost every jury impaneled there would be likely to be persons as ignorant respecting it as with regard to the most intricate questions of skill and science. The fact must be established by the testimony of persons who have acquired knowledge respecting it by experience or observation, and cannot be left to be inferred by the jury without proof.

III. The plaintiff was introduced as a witness, and amongst

2. COUNTY bridges: expert testimony.

other things, testified as follows: "Do you know, or did you
ascertain what the trouble was with your ribs?"
"I did." "What was it?" The defendant ob-
jected to this question because it calls for hear-
say, and is incompetent, because the witness is not an
expert. The objection was overruled, and the witness an-
swered: "My ribs were fractured." This action of the court
is assigned as error. It is apparent that a fracture of the ribs
may be of such unmistakable a character that the person hav-
ing sustained the injury may have positive knowledge of the
fact. In such case he does not give an opinion as an expert,
but s'ates simply a fact. Any one who knows a fact may tes-
tify in regard to it. It is not necessary that a witness should
be an expert before he can be allowed to testify that his ribs
were fractured. If his conclusions are not based upon sufficient
knowledge, that may be shown upon cross-examination. Surely
a witness, without being an expert, may testify that his arm
or his leg was broken, and he may have as satisfactory knowl-
edge of the fracture of a rib.

*3. EVIDENCE: expert: competency of witness.*

IV. The accident to the plaintiff happened on the 10th
day of June, 1875. The plaintiff remained in bed from fifteen
to eighteen days. In about twenty days he was
able to get around on crutches. Between the
eighteenth and thirtieth of July he drove the
mower in harvest. In September he commenced hauling wood
to town, but he did not make a hand to go to work, and do a
full day's work until the spring of 1876, when he went to farm-
ing, plowing and planting. This action was commenced in
February, 1876. It was tried in 1878, and reversed at the
June term, 1879. See 51 Iowa, 220. It became a very ma-
terial question affecting the measure of damages, as to the ex-
tent and permanency of the plaintiff's injury. Henry Fergu-
son, the plaintiff's brother, was introduced as a witness, and
testified as follows: "Had been acquainted with my brother,
Frank, all his life; lived at father's house with him; waited on

*4. ——; declaration of person injured.*

him after the accident; whilst bed fast he complained of his back, foot, and head; he was active and quick before he was hurt, and could stand hard work better than I could; never sick before that, except once with chills, ten years before; has not been so active since; he remained at home two years after the accident before he moved to himself; during these two years he was not active, compared with what he was before; didn't work as much; knew of his getting down again, or being stopped from work and confined to the house in the fall of 1876, the day before the election; was helping me ceil the cellar and got down; had fever." The witness was then asked the following question: "State whether he made any complaint while he was suffering at that time." The defendant objected to this question because incompetent and immaterial. The objection was overruled, and the witness answered: "He complained of his back."

John E. Ferguson was introduced as a witness, and amongst other things, testified as follows: "Plaintiff's health was good until the accident; he was active and able to work hard; not so active since; have been where he was in bed at times since the accident, and he had fever; he generally complained of his back; the spells would last from four days to a week or longer, and he would then be able to go to work again; he would do a hard day's work, and the next day be unable to do anything; have worked with him since in harvest-field; there were three or four times he would quit work." The witness was then asked the following question: "State why he quit, judging from what he said." This was objected to as incompetent. The objection was overruled, and the witness answered: "He would say he would have to quit and rest awhile; that his back was hurting him, so that he could not sit up straight; this was in 1876 and 1878."

Wesley McMains, a witness on behalf of the defendant, was asked, upon cross-examination, the following question: "Do you recollect plaintiff's stopping to rest whilst at work, and

saying that he must quit and rest on account of his back hurt-
ing." The defendant objected because not proper cross-exami-
nation, and incompetent, and hearsay. The objection was
overruled, and the witness answered: "Recollect of his com-
plaining to me at one time, whilst at work, of his back hurt-
ing him, and he said he would have to quit and rest."

The defendant assigns these several answers as error, and in-
sists that the statements admitted are self serving declarations,
made after convalescence, and that they are, therefore, inad-
missible. The plaintiff insists that the declarations are the
immediate accompaniment of acts, which they tend to explain,
and that they are admissible as part of the *res gestæ*. A majority
of the court think the declarations inadmissible under the doc-
trine announced in Wharton's Evidence, sections 268, 1100 and
1101, and the cases therein cited. A minority of the court
regard the declarations as admissible under Wharton's Evi-
dence, section 1102, and 1 Greenleaf on Evidence, Sec. 108, and
authorities cited.

V. O. S. Willey, a civil engineer, made the plan for the
bridge. The plan provides for a tenon on the queen posts en-
tering a mortise in the cross tie. No provision
was made for the escape of water from the mor-
tise. The evidence tends to show that it is diffi-
cult to keep the water out of a mortise constructed in that
way, that the timber shrinks and swells, and at times the
water gets in and lessens its durability. It was at the point
where these tenons entered one of the cross-ties, that it gave
way. There was evidence that the cross-tie was so rotten it
would crumble to pieces in the fingers, there being a shell
around it from half an inch to an inch thick. Respecting the
plan of the bridge the defendant asked the court to instruct as
follows: "The county is not liable in this case for injuries re-
sulting from a defective plan of the bridge, if it was defective."
The court refused this instruction, and instructed the jury as

*Margin note:* 5. COUNTY bridges: adoption of plan: negligence.

follows: "In the erection of county bridges it is the duty of the county to exercise ordinary and reasonable skill and care in adopting a plan, as well as in the construction of the bridge; and if you find that the defendant employed a competent and skillful engineer to prepare and draft the plan of the bridge in question, and that he did so, and recommended it as sufficient for that purpose, and the county authorities, in good faith believing it to be sufficiently strong and safe for the purpose designed, adopted it, then this would be the exercise of care and skill with reference to the plan, even though the engineer erred in his judgment with reference thereto." The instruction asked exonerates the defendant absolutely from all liability on account of the defective plan of the bridge, if it was defective. The instruction given simply holds the defendant to the exercise of reasonable skill and care in adopting a plan. The instruction given, we think, announces the correct rule. In our opinion a county cannot negligently and carelessly adopt an unsafe and insufficient plan for a bridge, on account of its cheapness, and be allowed to escape all liability for damages resulting from the insufficiency of the plan. The county should at least exercise reasonable care in the adoption of a plan. It is urged by appellant that the adoption of a plan for a bridge is a mere judicial act, and that no liability attaches for the adoption of an insufficient or improper plan. The same point was made in *Van Pelt v. The City of Davenport*, 42 Iowa, 308, which was an action to recover damages resulting from an alleged insufficient sewer. We held, however, that it was the duty of the city to exercise reasonable care, judgment, and skill to make the culvert of sufficient capacity to carry away the accumulated water without injury to property in the vicinity. The principle decided in that case, is applicable to this. See *Perry v. City of Worcester*, 6 Gray, 544; *Rochester White Lead Company v. City of Rochester*, 3 Comstock, 473.

Ferguson v. Davis County.

VI. The court instructed the jury that in determining the question of damages they should take into consideration the mental and physical suffering and pain caused by the injury. The giving of this instruction is assigned as error. That mental anguish caused by the injury inflicted is proper to be considered was recognized by this court in *Muldowney v. Illinois Central R. R. Co.*, 36 Iowa, 462. In *McKinly v. The C. & N. W. R. Co.*, 44 Iowa, 314, this court was divided in opinion whether mental anguish arising from the nature and character of the assault is an element of compensatory damages, a majority of the court holding that it is. We unite, however, in the conclusion that mental suffering, not arising simply from wounded or injured feelings, but from actual physical injury inflicted, may properly be considered in estimating compensatory damage. In giving this instruction there was no error.

6. COMPENSATORY damages: mental suffering.

VII. It is insisted that the court erred in instructing the jury as follows: "If you find from the evidence that the defendant was not negligent in the original construction of said bridge, then the defendant would not be liable for any injuries caused by the same becoming out of repair and defective, unless the defendant had notice thereof or knowledge thereof through the members of the board of supervisors, or unless the defect was so notorious that the defendant was negligent in not knowing it; or unless the bridge had been built so long that, in the exercise of ordinary care and prudence, the defendant ought to have known that it would in such time, become rotten and dangerous." It is claimed that this instruction expresses the idea that from length of time, alone, the county would be liable. The instruction is not vulnerable to this criticism. The instruction merely recognizes the doctrine that the bridge may have been built so long, and become so old, that the defendant, in the exercise of ordinary care and prudence ought to have known that it would in such time become rotten and unsafe. The instruction

7. BRIDGES: defective: notice: liability.

does not refer to the condition of the bridge which would render the defendant liable, but the knowledge, or means of knowledge, of the condition of the bridge. That the instruction announces a correct rule, we entertain no doubt.

VIII. The defendant complains of the giving of the following instruction: "But if you find from the evidence that said bridge by reason of defective construction or by age, had become rotten and dangerous, and you further find that the defendant knew such facts, or should have known the same, in the exercise of ordinary care and prudence, or that it was notified thereof, then it would be the duty of the defendant, within a reasonable time thereafter to make an examination of said bridge, or cause it to be done, and then to repair the bridge or to adopt means to prevent its use by the public, either by putting up barricades or in some way warning the public of the dangerous condition of the bridge, and to prevent its use by the public; and if the defendant, being so notified, or having such knowledge did not so act, then the defendant would be guilty of negligence, and if such negligence caused such injury to the plaintiff, then the defendant would be liable therefor, unless you should further find from the evidence that the plaintiff was negligent, and that his negligence contributed to the said injury. Notice to any one member of the board of supervisors would be notice to the defendant." The appellant seeks to establish the erroneousness of this instruction by supposing a state of facts not shown to exist in any case. The real thought of the instruction is that if the defendant knew, or should have known, in the exercise of reasonable prudence that the bridge had become unsafe, it should have repaired it, or prevented the public from using it. The dictates of humanity, as well as principles of law, impose upon the defendant this duty. As applied to the facts of this case the instruction is, we think, correct, and we would not feel justified in reversing the case, simply because the ingenuity of counsel can imagine or suppose a case in which it might

8. ——: ——:
failure to repair.

not be the duty of a board of supervisors to repeat the examination of a bridge every time they were informed that it was unsafe.

IX. The defendant assigns as error the giving of the following instruction: "The board of supervisors is charged by law with the duty of supervising and keeping the county bridges in repair. If the members of the board did not possess the requisite skill to discharge the duty of inspection, then it was the duty of the board to appoint or provide some one possessing such skill; and to have all county bridges under their care examined as frequently as men of ordinary prudence and care would deem necessary for the safety of the traveling public, and as experience demonstrated the necessity of examination, and if the board failed to do this, such failure would be negligence."

*9. ——: inspection of: negligence.*

The criticism made upon this instruction is that it does not define whose experiene shall govern the action of the board, whether the experience of the supervisors, who are required to exercise only ordinary care, or the experience of the skilled examiner whom they employ to inspect for them. Even if the instruction means the latter, we think it is not erroneous. For if the board themselves did not possess the requisite skill to make an inspection of the bridge, then in the matter of inspection, as well as in the frequency with which it should be made, they ought to be governed by the experience of the skilled person employed by them for that purpose.

X. The defendant assigns as error the giving of the following instruction: "If you find from the evidence that the defendant caused said bridge to be examined at some time prior to the accident by a person who possessed reasonable and ordinary skill in such matters, and find that he reported the bridge safe for a reasonable length of time, then the defendant would not be negligent for a failure to cause it to be examined until the expiration of such time, unless some member of the board of supervisors was

*10. ——: board of supervisors: notice of defect.*

notified that it had become dangerous and unsafe for public travel, and had neglected thereafter, within a reasonable time, to make examination to ascertain its condition." It is said that this instruction may be criticised for requiring an examination every time that some person notifies the board that the bridge is dangerous, and making this negligence *per se* without regard to prior care of the board. The evidence shows, however, that the last examination of the bridge was made, by one Lane, in February, 1873, when he reported that he thought the bridge would run four years, or about four years.

The accident to plaintiff occurred on the 10th day of June, 1875. Surely it was the duty of the board, not having an examination made for two and one-half years, to cause an examination to be made upon being informed that the bridge was dangerous. As applied to the facts of the case the instruction is not erroneous.

XI. The defendant assigns as error the giving of the following instruction: "If you find from the evidence that the said bridge had been out of repair and dangerous, because of rot and decay, for seven or eight months before it fell, and you further find that it was an old bridge, which had stood for a period of time greater than the average life of the timber such as was used in the bridge, and you further find that the defendant took no measure to ascertain the condition of the bridge, the defendant would be guilty of negligence." As applied to the facts of this case this instruction is erroneous, and, we think, it may have been prejudicial. It appeares without conflict that the bridge was examined and repaired by a mechanic, in February, 1873. He reported that he thought the bridge would run about four years. Now, in view of this examination and report, the mere fact that the bridge had stood for a period greater than the average life of the timber of which it was composed, and had been rotten and unsafe for seven or eight months, without ex-

amination by the board, would not render the defendant liable, unless some member of the board knew, or was informed of its unsafe condition, or in the exercise of reasonable care should have known of it. This is the doctrine of the instruction considered in the tenth point of this opinion, and the instruction now under consideration is not only erroneous, but is also in conflict with the foregoing instruction, in that it leaves out altogether the element of knowledge on the part of, or information to the board or a member thereof.

REVERSED.