## CARSON v. THE GERMAN INSURANCE COMPANY.

| | |
|---|---|
| 62 | 433 |
| 94 | 363 |
| 62 | 433 |
| 98 | 70 |
| 62 | 433 |
| 106 | 566 |
| 62 | 433 |
| 108 | 390 |
| 62 | 433 |
| 125 | 289 |

1. **Insurance**: FORFEITURE OF POLICY BY NON-PAYMENT OF PREMIUM: FACTS NOT CONSTITUTING. Where defendant issued and sent by mail to the plaintiff a policy of insurance on his drug-store, and with it sent a letter stating that its agent, M., would call upon plaintiff in a few days and settle for the policy, and, when M. called at plaintiff's place of business to make settlement and collect the premium, plaintiff was not at home, and M. requested plaintiff's son to tell plaintiff to forward the premium to the company, and it would be all right, *held* that plaintiff had a reasonable time, after being notified by his son, within which to forward the premium; that such reasonable time was determined by all the circumstances in the case, including the former dealings between the parties in respect to like business; that the defendant had no right to cancel the policy for the non-payment of premium before the expiration of such reasonable time; and that, a loss having occurred within that time, after notice to plaintiff that the policy had been canceled, and before the premium had been tendered, defendant could not avoid liability upon the policy on the ground that it had been canceled for the non-payment of the premium, notwithstanding a clause in the policy that it should be void if the premium should be unpaid.

2. ———: WAIVER OF PROOFS OF LOSS. Where a policy of insurance required that proofs of loss should be furnished to the company within thirty days after it occurred, but within that time the company informed the insured that the policy had been canceled prior to the loss, and that it would pay nothing thereon, *held* that this was equivalent to saying to the insured that he need furnish no proofs, as the loss would not be paid if he did; and to an action on the policy the failure of the insured to furnish proofs of loss within the thirty days was no valid defense.

3. **Evidence**: ADMISSION OF: ERROR WITHOUT PREJUDICE. The admission of irrelevant evidence is no ground for reversal where it clearly appears that the appellant could not have been prejudiced thereby.

4. **Verdict**: INTEREST ON TO DATE OF JUDGMENT. A party in whose favor a verdict has been rendered is entitled to interest thereon from the date of its return to the date of judgment thereon.

*Appeal from Linn District Court.*

WEDNESDAY, DECEMBER 12.

THIS is an action upon a fire insurance policy. There was a trial by jury, which resulted in a verdict and judgment for the plaintiff. Defendant appeals.

VOL. LXII—28

*Mills & Keeler* and *W. E. Blake*, for appellant.

*H. Boies* and *Preston Bros.*, for appellee.

ROTHROCK, J.—The plantiff is a practicing physician, re-
siding at Mount Vernon, in this state. He owned a brick
building, occupied as a drug-store and doctor's office, and, on
the 23d day of April, 1877, the defendant issued to him a
policy of insurance for one year upon the property, and the
same was continued in force by successive renewal receipts
down to April, 1880, when the company issued and mailed
to him the policy in suit, together with the following letter:

"OFFICE OF THE GERMAN INSURANCE CO., }
"FREEPORT, ILL., APRIL, 19, 1880. }

*"Jas. Carson, Esq.,*
                *"Mt. Vernon, Iowa—*
  *"Dear Sir:—Please find policy on your property in-
closed herewith. Mr. Marker will be in your vicinity soon,
and will call and settle for same with you.*

*Truly yours,*
"F. GUND, *Secretary."*

Carson accepted the insurance upon the terms stated in
the policy and letter. The company had no local agent at
Mt. Vernon. Adam Marker was their traveling agent. He
had procured the original policy, and collected some of the
premiums on previous renewals, and his residence was at
Freeport, Illinois. His general authority as an agent of de-
fendant only authorized him to receive and forward applica-
tions for insurance, and to collect and transmit premiums
therefor. On the 15th of September, 1880, Marker went to
Mt. Vernon to collect the premium of ten dollars on the
policy in suit. During business hours in the forenoon of
that day, he called at Dr. Carson's office and usual place of
business, and, he being absent from town, the payment of the
premium was requested of his son, who was his partner and
the person in charge of his office. The plaintiff's son refused

payment, upon the ground that his father was away from home, and he knew nothing about the matter. Marker returned to Freeport on September 17th, and reported the result of his trip, and on the 22d day of that month the secretary of the company canceled the policy upon the company's books, as follows: "Canceled, Sept. 22, 1880, for non-payment of premium."

On the evening of September 22d the plaintiff's son informed him that Marker had been there to collect the premium due on the policy. The next morning plaintiff went into the country to attend to some patients, and upon his return in the afternoon he received a dispatch calling him to Logan, Harrison county, Iowa, in consultation, and he left for that place on the first train. The property was totally destroyed by fire on that night. The plaintiff reached home on the morning of the 25th of September, and immediately telegraphed the fact of the loss to the company at Freeport, and on the same day he received the following reply:

"THE WESTERN UNION TELEGRAPH CO.,
"DATED FREEPORT, ILL., SEPT. 25, 1880.

"*To Jas. Carson:*—Your insurance is canceled on our books for non-payment of premium. Can do nothing for you.

"F. GUND, *Secretary.*"

Carson made out proofs of loss, but did not serve them on the company until after the expiration of the thirty days stipulated in the policy. No tender of the premium was made until forty or fifty days after the loss, and, when made, it was refused. In defense to the plaintiff's claim, the company pleaded—

*First.* That prior to the loss plaintiff's policy was canceled on its books for non-payment of premium, of which he had notice.

*Second.* That no proofs of loss were furnished within thirty days after said fire, as provided by the terms of the policy; and that no proofs under the policy in suit were ever presented by the plaintiff, or waived by defendant.

*Third.* That at the time of such loss the premium of ten dollars for said policy was due and unpaid, and, by reason thereof, the policy was by its terms suspended, and defendant is not liable thereon.

The above facts in the case are not in dispute. They are in substance and, indeed, to some extent, in the language of the statement of facts made in the argument of appellant's counsel. It is claimed by appellant that the principal question presented by this appeal arises under the third defense.

1. INSUR-ANCE: forfeiture of policy by non-payment of premium: facts not constituting.

The policy in suit, after enumerating certain contingencies which would render the contract void, proceeds as follows: "Or if the premium shall be unpaid, then, and in every such case, the policy shall be void, and the insured shall not be entitled to recover from the company any loss or damage which may occur to the property hereby insured, or any part or portion thereof." A literal interpretation of this clause in the policy would exempt the company from liability, if the premium should be unpaid at the time of the loss, even if at that time it was not due. But such a construction could not have been intended by the parties. Suppose that at the time the policy was issued Carson's note had been taken for the premium payable in three months, and within that time the loss had occurred; it surely would not be claimed that the policy was suspended, and that the company was not liable. In these latter days many insurance companys have adopted the credit system in the transaction of their business with the public. They give time for the payment of premiums, and take promissory notes therefor, and provide in the policy that, when the premium becomes due and remains unpaid, the default in payment shall operate as a suspension of the policy, and that, upon payment being made, the policy shall be revived; and contracts of insurance of this character have been sustained by the courts.

In the case at bar, however, this question of temporary suspension is one neither proper nor necessary for discussion,

because there was no suspension of the policy. It was ᵇsolutely canceled by the company, and it was canceled, not ᵉcause the company did not desire to carry the risk, but for ₋on-payment of the premium. And we think the rights of the parties in this case turn upon the question whether the company had any right under the facts to terminate the contract at any time before the loss. Or, in other words, was the jury required, under the facts in the case, to find that the premium was overdue and unpaid at the time of the loss, and was the company for that reason justified in canceling the policy when it was canceled. To determine this question, the policy and the letter which accompanied it must be construed together. The defendant sent these to the plaintiff as its obligation, and the plaintiff accepted the offer and relied upon it. The insurance was a valid insurance, and so remained until the fire, unless it was terminated by the default of the plaintiff in not settling with Marker. It is proper to say, in the first place, that it is entirely immaterial what authority Marker had as an agent of the company as to other insurance. In this instance he was authorized to settle with Carson for the policy. Being thus authorized, suppose he had found Carson in his office when he called, and, Carson being out of funds, he had gone away saying he would be back on his next trip in a few weeks, and that Carson could then pay. We think in such a case, if a loss should occur in the interim, the company would be liable. We cannot subscribe to the doctrine contended for by counsel for appellant, that, if Marker called at the office of plaintiff in his absence, and demanded payment, and payment was refused, this, without notice to the plaintiff, and without unreasonable delay on his part to make payment, authorized the company to rescind the contract for that reason. The modern methods of securing business by insurance companys by canvassing and collecting, and the adoption of the credit system, and the temporary suspension of policies in case of over-due premiums, preclude the idea that the appearance of Marker at plaintiff's office in

his absence, and a demand of payment of the person in charge, should be regarded as a demand for the performance of one of two concurrent acts, to be performed by two parties, or as a demand upon promsssory notes, bills of exchange, or the like. But, aside from this, the jury were warranted in finding from the evidence that Marker left word with plaintiff's son to tell his father to send the money to the company, and it would be all right. And the court, we think, correctly instructed the jury that "a mere request by defendant's agent, left with another at plaintiff's office in his absence, that plaintiff should forward the premium in question to defendant's home office, is insufficient to constitute a defense to this action, unless you find that such request was accompanied by definite notice to plaintiff that a failure to forward such premium immediately, or within a given time, would invalidate said policy; and further find that such notice was brought to plaintiff's knowledge, and that he neglected to comply with defendant's request for an unreasonable time after the same was communicated to him." The jury were further warranted in finding that there was no unreasonble delay between the time the plaintiff was advised that the premium had been called for and the loss. We need not cite the facts which justified this finding. We may say, however, that we think the manner of making the previous payments to the defendant for insurance on the same property was competent evidence, as bearing upon the question as to the understanding of the parties to the contract.

It is urged that the court failed to fully state to the jury the issues in the case; that the issue as to the cancellation of the policy was not stated in the instructions. It is true, the court did not state this as a distinct issue. But the jury was instructed that defendant averred that plaintiff failed and refused to pay to defendant the premium of ten dollars for said policy. This was a statement in plain language of all there was in that branch of the case, and it was wholly immaterial whether the policy was canceled or suspended. The whole

controversy, so far as the original liability was concerned, turned upon the question as to whether or not plaintiff was in default in making payment of the premium, and the instructions were sufficiently explicit, and all the principles of law applicable to this part of the case were fairly and fully stated to the jury.

Upon the question as to the waiver of the proofs of loss, the court instructed the jury as follows:

" 7. If you find from the evidence, that, after the issuing

2. ——— : of the policy in question, and before its termina-
waiver of
proofs of loss. tion, the property insured thereby was destroyed accidentally by fire; and further find that its value exceeded the insurance thereon; and further find that on the day following such destruction plaintiff telegraphed to the secretary of defendant, at its home office in Freeport, Ills., the fact of the destruction of such property by fire; and further find that immediately thereafter, and before the time within which plaintiff was bound by the terms of said policy to furnish defendant proofs of loss, the defendant repudiated its contract of insurance, and denied all liability upon the policy in question, solely upon the ground that plaintiff had failed to pay the premium due upon such policy; and further find that defendant has at all times since repudiated said contract of insurance, and denied all liability thereon solely upon such ground, then you are instructed that such acts of defendant amount in law to a waiver of the condition in said policy that proofs of loss shall be furnished, and defendant cannot now insist upon the failure of plaintiff to furnish such proofs as a defense to this action. The burden of proof is on the plaintiff to satisfy you by a preponderance of evidence that he did so notify defendant of said loss, and that defendant repudiated the alleged contract, and, unless he does so satisfy you, your verdict will be for defendant." This instruction is objected to by appellant, because it does not place the waiver upon the ground of estoppel. The substance of this instruction is, that an unqualified repudiation of the contract, upon

the ground that plaintiff had failed to pay the premium, was a waiver of the preliminary proofs. It is conceded by appellant that an absolute denial of liability has generally been held to waive the preliminary proofs of loss; but it is claimed that the waiver is placed upon the ground of estoppel, as where defective or incomplete proofs have actually been furnished, and the assured has neglected to amend or complete such proofs within the time stipulated, solely by reason of the company's denial of liability. In Flanders on Insurance, 542, 543, it is said that "the refusal to recognize the existence of any claim, or a general refusal to pay, renders the delivery of notice and proofs of loss a useless ceremony, and it is treated as waiving a strict compliance with the condition as to preliminary notice and proofs, both in respect to form and title." We are unable to see how an unqualified denial of liability can be held to be a waiver of preliminary proofs of loss upon the ground of estoppel. The insured is not induced by the denial of liability to change his position or alter his conduct. He is in effect informed by the company that he need not prepare his proofs, as the loss will not be paid if he does. See *Taylor v. Insurance Company*, 9 Howard, 390. It is said that this instruction is also erroneous, because, under it, the jury were authorized to find that the defendant at all times repudiated the contract of insurance, and denied all liability, solely on the ground that plaintiff had failed to pay the premium. It is claimed that there was no evidence that any communication whatever passed between the company and Carson during the thirty days after the loss, except the telegram, and any denial of liability thereafter could not affect the question of waiver. It is said that the company neither denied nor admitted any liability. This part of the instruction was correct. The telegram was a positive and unqualified refusal to recognize any liability, because of the non-payment of the premium. It was never afterwards modified or withdrawn. It was a standing repudiation of any claim upon it, and the jury could well find under the evidence

that the company at all times refused to recognize the claim upon the ground therein stated.

An objection is made because the plaintiff was permitted to introduce in evidence a certificate of a notary public near-

3. EVIDENCE: admission of: error without prejudice. est to the place of loss, certifying under seal that the loss was a *bona fide* one in all respects. It is said that this certificate was on the same sheet of paper with certain proofs of loss. This evidence should not have been introduced. The plaintiff did not rely in his pleadings on any proofs of loss. There were no proofs of loss of any kind, defective or otherwise, served on the defendant within the time required by the policy. But this evidence was no prejudice to the defendant. It had denied any liability, and thereby waived proofs of loss, and the cause was tried and submitted to the jury, not upon any evidence of such proofs, but upon a waiver thereof.

The policy was for $1,000. The verdict was for $1,091, which, it is claimed, included interest from the time when the proof of loss was waived. Upon the motion for a new trial, the court required the plaintiff to remit three months' interest and ten dollars due upon the policy, which was done. Judgment was then entered upon the verdict for $1,091 and costs. It is claimed that judgment should not have been rendered for the full amount of the verdict. It appears that the verdict was returned April 1, 1882. The motion for a new trial was overruled, and judgment entered, November 4 of the same year. The plaintiff was entitled to interest on $1,000 from

4. VERDICT: interest on to date of judgment. the rendition of the verdict until the judgment was rendered. It does not appear from the abstract that this interest was taxed as part of the costs. If it was not so taxed, the judgment is not too large. In any event, the mistake, if any, can readily be corrected in the court below.

AFFIRMED.