WILLIAM H. DAWSON et al., Appellees, v. BANKERS LIFE COMPANY, Appellant.

No. 41565.

MARCH 14, 1933.

REHEARING DENIED JUNE 23, 1933.

Wilson & Harris, and Alberson & Nourse, for appellant.

Ralph G. Howard and Chas. E. Hird, for appellees.

KINTZINGER, J.—The facts are substantially as follows:

The insured was a young man 27 years of age. On the day of and shortly before his death, he was engaged in playing a game of

baseball. In running the bases during the seventh inning, he made a slide to third base.

It is plaintiffs' contention that he was injured internally in the slide to third base. Some 15 or 20 minutes after the "slide" he was taken violently ill and removed to a doctor's office, wherein he died in about an hour.

Up to the time of receiving the alleged injury, he was strong, healthy, and robust; had never had any rheumatism, influenza, venereal or other diseases, and never had any indication of heart or other organic trouble, which might cause a sudden death. He was a farmer, doing most of the work on a 160-acre farm, had been engaged in outdoor work, and was experienced in playing baseball.

He was examined for life insurance by a company doctor about 90 days before his death, and was by him considered and recommended a good risk for insurance. At that time his blood pressure was normal. The doctor made an examination of his mouth, throat, teeth, chest, heart, pulse, temperature, and general build. His tonsils were somewhat affected, but the doctor made no report of it, and did not consider it sufficient to exclude insurance.

On the day of the ball game, and up to the time he made the "slide", no one observed anything wrong with him. He had played a good peppy game, and never played a better or faster game than he was playing that day. Before the "slide" he made no complaint whatsoever.

After sliding to third base, another player made a two-base hit, and the deceased slowly sauntered into home plate. The next batter was put out on a fly, retiring the side. During the next, or first half of the eighth inning, the deceased was out in the left field, squatting down in a crouched position, and was not playing his usual game, in an upright position.

At the end of the first half of the eighth inning, he walked in slowly towards home plate, humped over, with his hand over his abdomen. As he came along the third base line, holding his side, he sank down on the ground. From that time on he suffered great pain until he died. After he came in from the field, he was met by some players who assisted him into an automobile. This was about 15 or 20 minutes after he made the slide. After coming in from the field, he began spitting and vomiting blood. When he was picked up, he exclaimed: "Oh I am so sick." While lying on the ground, he was groaning with pain and vomiting, and big drops of sweat

were standing out on his head. While in the car before leaving the ball field, he said to a fellow player: "Will, when you picked me up there, I thought I was going to die. *I hurt myself when I slid to third base.*" He also said: *"When I made that slide into third base, I felt a tear in there"* (indicating his abdomen). On the way down to the doctor's office he complained of pain, and continued to hold his side until he died. He was somewhat relieved of pain by raising his leg to his abdomen, but on straightening it out again the pain increased.

At the doctor's office, when the doctor asked him where it hurt, he said: "I hurt right in there (indicating his abdomen). *When I slid to third base out there, I felt a tear in there.*" He died in the doctor's office about a half hour after he arrived and about an hour and twenty minutes after the time he made the slide to third base.

The evidence shows that the plaintiff was accustomed to sliding to bases, and that a slide to a base is not ordinarily followed by serious consequences.

Several days prior to the ball game, deceased hurt his arm or wrist, requiring three stitches and a bandage. After the ball game, and at the doctor's office, Dr. Thornburg, defendant's witness, examined the arm, took out the stitches, said it was all healed up, and told deceased: "That ain't what's the matter with you."

Medical experts on behalf of claimants, in answer to hypothetical questions, testified that in their opinion, in a case of that kind, under the circumstances disclosed by the evidence, the cause of death of a person receiving such injuries was from an internal injury or hemorrhage caused by external force, and that in their judgment death under those conditions would not be due to any natural cause or causes.

The expert opinion evidence of the medical experts offered on behalf of the plaintiffs and defendant was conflicting as to the cause of decedent's death.

The testimony of the medical experts offered on behalf of the defendant was to the effect that a person, under the facts assumed in the hypothetical questions put to them, died from angina pectoris, and not from an accident.

The medical evidence on behalf of the plaintiffs showed that a person under the facts assumed in the hypothetical questions, based on the evidence, could not possibly have died from angina pectoris,

and, in their opinion, the death was produced by *an internal injury caused by an external force.*

The medical testimony shows that angina pectoris is simply the symptom of a diseased condition of the heart organs, and, if this disease in such organs did not exist, *there would be no angina pectoris.* The pathology showing the existence of disease would necessarily be present for some considerable length of time before an attack of angina pectoris occurred. One of the doctors testifying on behalf of the defendant made an examination of the deceased 90 days before his death, and failed to find any symptoms of such disease. Medical experts also showed that, if none of the diseases existed in the heart organs, physical exertion itself would not bring on an attack of angina pectoris.

Plaintiffs' witnesses testified that the presence of such diseases would be discovered by a physical examination of a person occurring 90 days before his death. This was admitted by defendant's experts, but they say it could have been discovered upon such an examination, but that it might not.

The provision of the policy relied on for double indemnity is as follows:

"Upon receipt of due proof that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, the Bankers Life agrees to pay double the amount called for in the policy."

"This double indemnity benefit will not apply if the insured's death resulted from some physical or mental infirmity or directly or indirectly from disease of any kind."

A certificate of the attending physician was furnished wherein the cause of death was given as angina pectoris. The first proofs of loss were furnished to the company by claimants about September 22, 1930, giving as the cause of death, an injury to decedent's wrist, received nine days before his death. On September 29th claimants filed an amendment to their first proofs, by furnishing another affidavit, stating that the death of the insured resulted from an accident upon the baseball field on September 17, 1930. The claim that the cut had anything to do with the cause of his death was wholly abandoned, and at the trial the evidence as to the cause of death was centered upon the alleged accident upon the baseball field.

About October 7, 1930, claimants received a letter from the insurance company denying liability for the double indemnity because no proof that insured's death resulted from an accident was submitted to the company. A few days thereafter claimant and his attorney visited the officers and attorney for the company at their office in Des Moines. At that time and place, claimant told the company they could furnish evidence to prove that deceased died accidentally, if they wanted it, and orally advised the company's officers and attorney of the nature of such additional proof. The conversation was had with Mr. Nourse, their attorney. At that time the attorney said he did not care for additional proofs, that they were not going to pay any of the extra $1,000, and that they refused to pay any of the additional double indemnity.

I. One of the claims made in this case is that because the slide to third base made by the deceased was an ordinary occurrence in a ball game, that an injury resulting therefrom would not in itself be considered accidental.

The requisites of the policy required a showing that death resulted exclusively from bodily injury inflicted through accidental means. In many jurisdictions the courts distinguish between *accidental results* and *accidental means*, and requires that both be proved in order to meet the provisions of such a policy. Such was the earlier rule in Iowa. In the case of Lickleider v. Iowa State Traveling Men's Ass'n, 184 Iowa 423, 166 N. W. 363, 367, 168 N. W. 884, 3 A. L. R. 1295, the early rule was modified, and it was there held that an *accidental result* and the *accidental means* by which it is caused are somewhat identical, and that proof of the former may be considered as proof of the latter. See, also, U. S. Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60; Budde v. Nat. T. Ben. Ass'n, 184 Iowa 1219, 169 N. W. 766.

In the Lickleider case, supra, we said:

"The rule, clearly deducible from the overwhelming weight of authority, is that when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in Western C. T. Ass'n v. Smith, 29 C. C. A. 223, 85 F. 401, 40 L. R. A. 653, where he says: 'An effect which does not ordinarily follow and cannot be

reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and * * * cannot be charged with the design of producing, * * * is produced by accidental means.' "

In the Lickleider case, supra, we also said:

"In our judgment it was open to the jury to find from all these circumstances that in this involuntary and undesigned movement so unexpectedly produced he sustained a strain or injury to some of his vital organs, which proved fatal. A death so produced would be accidental both in cause and in effect."

If there was, therefore, any testimony from which it could be reasonably inferred that the decedent was injured in his slide to third base, and that such act of sliding is ordinarily done without serious consequences, the resultant injury would be considered as caused by accidental means, and the question of accidental death was properly one for the jury.

There was objection to the competency of some of the medical evidence on behalf of the claimants, as to the cause of death in connection with an injury while making the slide to third base, as invading the province of the jury. Although such objection was made, the point was not raised in appellant's brief and argument, and is therefore not considered further.

■■■ II. The appellant contends that the testimony of the attending physician, based on his personal examination, cannot be put in question by expert opinion evidence of other doctors based upon proper hypothetical facts. The cross-examination of the attending physician reveals the fact that he himself before the death of decedent did not know what was the matter with him, and his testimony would not be conclusive as to the cause of death, if expert evidence of other doctors contradicting the same was based upon proper hypothetical question. Such is the ruling in this state. Younkin v. Yetter, 192 Iowa 279, 181 N. W. 793; Ball v. Skinner, 134 Iowa 298, 111 N. W. 1022; Halfpap v. Gruis, 199 Iowa 757, 202 N. W. 592; Ranne v. Hodges, 181 Iowa 162, 162 N. W. 803. In Younkin v. Yetter, 192 Iowa 279, loc. cit. 284, 181 N. W. 793, 795, this court said:

"Error is claimed in the refusal of the court to withdraw the appellee's claim for injury to his wife. The appellant offered the

testimony of a physician who had never attended the appellee's wife, but who, answering a hypothetical question, testified that the physical conditions described by the appellee's wife might be due to natural causes. This testimony was properly admitted, but was not conclusive on the question. The appellee's wife testified regarding her condition of health before the injury and afterward. Extensive arguments are presented to us on the question of whether or not appellee's wife was injured, and the extent of such injuries, if any, and whether or not the conditions of which she complains were caused by the accident or are the result of natural conditions, or of imagination, or malingering. We cannot pass upon these disputed questions of fact. The finding of the jury has substantial support in the evidence, and we cannot interfere."

It is our conclusion, under the facts in this case, that the testimony of the attending physician was not conclusive, and that it could be put in question by other expert medical evidence.

III. Appellant complains that the court erred in admitting evidence of statements made by the deceased after the injury is alleged to have been received. When deceased was picked up after he sank to the ground, on returning from the field, and about 15 minutes after he made the slide, he exclaimed: "Oh, I am so sick". After they put him into an automobile, and before they left the ball ground for the doctor's office, he also said: "Will, when you picked me up there I thought I was going to die. I hurt myself when I slid to third base". He also said: "When I made that slide to third base, I felt a tear in there" (indicating his abdomen). In the doctor's office, in reply to the doctor's inquiry as to where it hurt, he said: "I hurt right in there (indicating). When I slid to third base out there, I felt a tear in there" (indicating).

The questions eliciting these answers were all objected to as calling for hearsay answers and not being part of the *res gestae.*

During all of the time after he came in from the field at the end of the first half of the eighth inning he suffered intense pain until his death, about an hour afterwards. These statements were all made shortly after the slide and while he was suffering extreme pain.

It is the well-settled law in this state that statements made under such circumstances are properly received as part of the *res gestae,* and their admission is largely within the discretion of the trial judge. Farrow v. What Cheer Clay Products Co., 198 Iowa 922, 200 N. W.

625; Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N. W. 81; Travelers Ins. Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437; Hinnah v. Seaba, 193 Iowa 1206, 188 N. W. 909; Duncan v. Rhomberg, 212 Iowa 389, 236 N. W. 638; Wray v. Warner, 111 Iowa 64, 82 N. W. 455.

It is held in some states that evidence of this character is limited to statements made at the time an injury was received. Such is the rule announced in a number of cases cited by appellant. Western & A. R. Co. v. Beason, 112 Ga. 553, 37 S. E. 863; Hill v. Aetna Life Ins. Co., 150 N. C. 1, 63 S. E. 124; Keefer v. Pacific Mut. Life Ins. Co., 201 Pa. 448, 51 A. 366, 88 Am. St. Rep. 822; Eastman v. Boston & M. R. R., 165 Mass. 342, 43 N. E. 115; Chicago West Div. Ry. Co. v. Becker, 128 Ill. 545, 21 N. E. 524, 15 Am. St. Rep. 144; Martin v. New York, N. H. & H. R. Co., 103 N. Y. 626, 9 N. E. 505.

The great weight of authority, however, seems to be with the Iowa rule as announced in cases hereinbefore mentioned. In Travelers Ins. Co. v. Mosley, 8 Wall. 397, 408, 19 L. Ed. 437, the court says:

"The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority."

In Hinnah v. Seaba, 193 Iowa 1206, loc. cit. 1218, 188 N. W. 909, 914, we said:

"The tendency of the courts has been to relax somewhat the old rule that the relation of a past event, no matter how closely it may be related to the transaction itself and other circumstances, is inadmissible. In the instant case the statements were made at a time and place and under such circumstances as to preclude the idea that the statements were made with sinister motives and with deliberate design; that they were such as to afford a reasonable or reliable explanation of the principal transaction. Within the rule of the cases, applied with care, the admissibility of such statements, under the circumstances of a particular case, is largely within the discretion of the trial judge."

In the case of Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, loc. cit. 888, 175 N. W. 81, 84, we said:

"An examination of these cases demonstrates that this court is not in harmony with the extreme view entertained by some authorities that to be admissible as *res gestae* the statements offered in evidence must have been spoken at the very time of the injury, or so near thereto as to be practically concurrent with the accident itself. * * * 'The time element, while important, is not controlling under all circumstances.' We have repeatedly said that the proper test of admissibility of such statements is whether they relate to the principal transaction and are explanatory of it and are made under such circumstances of excitement still continuing as to show they are spontaneous and not the result of deliberation or design."

In the case at bar, the deceased made a slide to a base. He continued in the game only a half inning, during which his actions on the ball field were not as usual. Immediately after coming in from the field, he sank on the ground. From that time on until his death he complained of great pain and suffering. He made these statements while in this condition, shortly after he made the slide. There is no evidence tending to show any ulterior motive. We find no error in the admission of this evidence.

IV. It is also claimed that, even though the statements were part of the *res gestae,* they were expressions of an opinion by a lay witness and not admissible. A nonexpert witness may not be competent to testify as to the nature of an injury generally, but in this case the statements made by the deceased were part of the *res gestae* and were in the nature of the statement of a fact. It might not be competent for one lay witness to testify that another witness was suffering pain. The testimony of a lay witness as to whether he himself suffered pain is the best kind of evidence. The expressions of a witness as to his feelings are properly admissible, and the admissibility thereof within the discretion of the trial judge, especially when made as part of the *res gestae.* Frink & Co. v. Coe, 4 G. Greene 555, 61 Am. Dec. 141; Ferguson v. Davis County, 57 Iowa 601, 10 N. W. 906; State v. Hickman, 195 Iowa 765, 193 N. W. 21; Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N. W. 81; Wray v. Warner, 111 Iowa 64, 82 N. W. 455.

The statement of deceased that he felt something tear in his abdomen when he made the slide to third base is merely the expression of his bodily feeling. In the case of Frink & Co. v. Coe, 4 G. Greene 555, loc. cit. 556, 61 Am. Dec. 141, the court said:

"This declaration of the party was a part of the res gestae. It was contemporaneous with the injury, and illustrated its character. It expressed the bodily feelings of the party, the location and nature of his suffering."

In the case of Ferguson v. Davis County, 57 Iowa 601, loc. cit. 605, 10 N. W. 906, 908, this court said, in reference to a statement of a witness who testified that his ribs were fractured:

"It is apparent that a fracture of the ribs may be of such unmistakable a character that the person having sustained the injury may have positive knowledge of the fact. In such case he does not give an opinion as an expert, but states simply a fact. Any one who knows a fact may testify in regard to it. It is not necessary that a witness should be an expert before he can be allowed to testify that his ribs were fractured."

If the witness were alive and on the witness stand, he would be permitted to testify that when he slid he felt a tear in his abdomen, as this would not be the statement of an opinion; it would not be a diagnosis of his condition, but would merely be a statement of a fact as to his feelings and his sufferings. And, when this statement was part of the *res gestae*, it was competent. We find no error in admitting it.

The statements made by the deceased were made under the excitement and during the continuation of the extreme pain suffered by him shortly after receiving the injury and prior to his death.

V. Complaint is made of the court's action in overruling appellant's motion for directed verdict because of plaintiff's failure to furnish due proofs of death from accidental cause. The record in this case shows that notice of decedent's death through accidental cause was furnished the company. The first notice, given within a few days after decedent's death, stated that the death was occasioned by an accidental injury on a corn binder September 8, 1930.

On September 29, 1930, the beneficiaries notified the defendant by an amendment to their first proof of loss alleging that the death resulted from an accident and injury received on September 17, 1930, while playing ball at Guthrie Center. Thereafter on October 7, 1930, the defendant company acknowledged receipt of claimants' amended proof of loss, and in a letter advised them that their claim as to double indemnity was denied for lack of proof of accidental cause.

After receipt of said letter, claimants offered to furnish any additional proof defendants might require. This was done early in October, 1930. It is now claimed that appellees failed to furnish due proofs of death from accidental cause as required by the policy.

Appellees contend that due proofs of loss were furnished, and that, if they were not sufficient, appellant waived the furnishing of additional proofs, by failing to object to the proofs furnished, within a reasonable time. Appellees were informed by the company, through its officers, that it would be useless to furnish them any further proofs; *that the company denied liability for a double indemnity, and refused to recognize any further liability.* This was all done within the time in which proofs were required to be made, under the policy. The policy provides that: "All proofs of death must be furnished upon the blanks supplied by the Company," and "upon receipt of proof that death resulted directly from bodily injury solely through external accidental cause, the Company agrees to pay double benefits." The record shows that claimants furnished a proof of loss upon one of the company's blanks on September 22, 1930. After sending such proofs, claimants discovered that the death was caused solely by an accidental injury received on the baseball field, and not from angina pectoris as originally reported. On September 29, 1930, they amended their proofs by furnishing the company an additional affidavit showing death resulting from an accident received on the baseball field.

The policy does not require that proofs of loss must all be contained in one particular statement or blank, or that they could not be amended. The evidence shows the proofs were amended, and that claimants asked for, but were refused, further blanks for that purpose. The policy does not provide that the proofs first furnished should constitute the sole and only proofs of loss, or that they would be binding and conclusive. In some cases cited by appellant it is held that payment was conditioned upon furnishing proofs *satisfactory* to the insurer. Such a provision is not contained in the policy in question. If proof of death is duly furnished and the same is not satisfactory to the company, it should furnish additional blanks when requested or advise claimant of what additional proofs are required, if the request is timely made. Under this policy the defendant became liable "upon receipt of due proofs that the death of the insured resulted directly and independently of all other causes, from bodily injury effected solely through external, violent

and accidental cause". Such proof was furnished by the amendment sent to defendant on the 29th of September, 1930. There is no claim that it was received too late. The additional proof advised the company "that the accident and injury to said deceased which resulted in his death, occurred on September 17, 1930, while playing ball at Guthrie Center, Iowa, and that the facts concerning such injury were not known to the claimants when they signed the original proof of September 22, 1930; that the nature of said injury was an internal rupture or injury, the exact nature of which they were unable to state". If the original statement advised the company that the death may have resulted from one cause, and the claimants later discovered the death was due to another, there is nothing in the policy precluding claimants from so showing.

If there were any defects or insufficiencies in the proofs furnished, the failure of defendant to object thereto or to point out specific defects, or call for additional information, would be a waiver of further proof. Dyer v. Des Moines Ins. Co., 103 Iowa 524, 72 N. W. 681; Young & Co. v. Hartford Fire Ins. Co., 45 Iowa 377, 24 Am. Rep. 784; Jack v. Farm Property Mut. Ins. Ass'n, 205 Iowa 1294, 217 N. W. 816; Elmore v. Southern Surety Co., 207 Iowa 872, 224 N. W. 32; Sinclair & Co. v. National Surety Co., 132 Iowa 549, 107 N. W. 184; Green v. Des Moines Fire Ins. Co., 84 Iowa 135, 50 N. W. 558.

In the case of Dyer v. Des Moines Ins. Co., 103 Iowa 524, loc. cit. 531, 72 N. W. 681, 683, we said, quoting from Wood on Insurance, p. 968:

" 'It seems to be settled beyond dispute that, where there are defects in the proofs of loss, whether formal or substantial, or, indeed, in any respect which could have been supplied if specific or other objections had been made thereto by the underwriters, a failure on their part to object to the proofs upon that ground, or to point out the specific defect, or to call for the information omitted within a reasonable time, is considered a waiver, however defective, informal, or insufficient such proofs may be.' "

The question of waiver was submitted to the jury with the issues without challenge by motion or otherwise. It is the rule of law that, if a case is tried by the parties upon a certain theory, it cannot be questioned for the first time on appeal. Ormsby v. Graham, 123 Iowa 202, 98 N. W. 724; Roberts v. Ozias, 179 Iowa 1143,

162 N. W. 584; State Bank of Chicago v. Oyloe Piano Co., 195 Iowa 1152, 193 N. W. 403; 5 Joyce on Law of Insurance, section 3373; Washburn-Halligan Coffee Co. v. Merchants B. Mut. Fire Ins. Co., 110 Iowa 423, 81 N. W. 707, 80 Am. St. Rep. 311; Parsons v. Grand Lodge A. O. U. W., 108 Iowa 6, 78 N. W. 676; Bloom v. State Ins. Co., 94 Iowa 359, 62 N. W. 810; Carson v. German Ins. Co., 62 Iowa 433, 17 N. W. 650.

It is also the law of this state that, where the insurer denies all liability under a policy, such denial operates as a waiver of proofs of loss, or defects in proofs already furnished. Richardson v. Farmers Mut. Hail Ins. Assn., 214 Iowa 30, 241 N. W. 414. In the Richardson case, above cited, we said:

"The rule is well established that a denial by the insurer of all liability under the policy will operate as a waiver of the provisions requiring notice and proofs of loss, or any defects in notice of proofs."

The evidence in this case shows that the defendant company denied all liability for double indemnity under the policy in question. The furnishing of further proofs was therefore waived. Washburn-Halligan Coffee Co. v. Merchants Brick Mut. Fire Ins. Co., 110 Iowa 423, 81 N. W. 707, 80 Am. St. Rep. 311; Parsons v. Grand Lodge A. O. U. W., 108 Iowa 6, 78 N. W. 676; Bloom v. State Ins. Co., 94 Iowa 359, 62 N. W. 810; Carson v. German Ins. Co., 62 Iowa 433, 17 N. W. 650; Boyd v. Cedar Rapids Ins. Co., 70 Iowa 325, 30 N. W. 585.

VI. It is also urged that the court erred in overruling defendant's motion for a directed verdict because the evidence failed to show that the insured's death resulted from bodily injury solely through accidental means. It is the law that, in order to recover on a policy of this kind, the claimants must show by a preponderance of the evidence that the death resulted solely from bodily injury received through accidental means.

It is unnecessary to repeat the evidence which has already been set out. From this evidence, the questions as to whether or not the deceased received an accidental injury at the time he made the slide to third base, and whether or not the accidental injury so received was the sole cause of his death, were purely questions for the jury. The jury was properly instructed that the burden of proof was upon plaintiff to show that Dawson sustained bodily injury in sliding to

third base; that the injury was effected solely through external, violent, and accidental cause; that his death resulted directly from the bodily injury so sustained, independent of all other causes; and that plaintiffs did furnish defendant due proofs or that such proofs were waived.

There is evidence showing that up to the day of his death he had always been in good health; had never had any signs of heart trouble; and that 90 days before his death he was examined for life insurance and found in good physical condition;

That on the day of his death he made a slide to third base; that immediately after the slide he did not play his usual game; that within 15 minutes after the slide he sank to the ground and was eliminated from the game;

That shortly after the slide he said he hurt himself in the abdomen when he made the slide, and that he felt a tear in his abdomen when he made the slide; that he almost immediately after the slide spit and vomited blood; that he suffered intense pain almost continuously after he quit the game till he died; that he died about one hour after the slide; that testimony of the medical experts shows that the cause of death under such facts was from an internal injury produced by external force; and that he could not have died from angina pectoris. Medical experts on behalf of appellees testified that the death, under the conditions and circumstances shown, was not due to natural causes, but was due to some external injury, strain, or blow, which could have been received in the slide to third base.

The rule of law is that, where any facts are shown, bearing upon the question which afford room for fair-minded men to conclude that one theory of the case is better supported than the other, the question should be submitted to the jury. Lunde v. Cudahy Packing Co., 139 Iowa 688, 117 N. W. 1063; Carpenter v. Security Fire Ins. Co., 183 Iowa 1226, 168 N. W. 231; First Nat. Bank v. Royal Ind. Co., 193 Iowa 221, 186 N. W. 934; Lyons v. Farm P. M. Ins. Assn., 188 Iowa 506, 176 N. W. 291.

There was a sufficient conflict in the evidence upon these questions to take them to the jury.

We find no error in the record, and the judgment of the lower court is affirmed.

KINDIG, C. J., and STEVENS, ALBERT, DONEGAN, ANDERSON, MITCHELL, and UTTERBACK, JJ., concur.

EVANS, J., took no part.