MARIETTA C. HURLEY *vs*. METROPOLITAN LIFE INSURANCE COMPANY.

Bristol.     October 26, 1936. — December 1, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Insurance*, Accident, Waiver. *Autopsy.* *Agency*, Scope of authority. *Waiver*.

Evidence that the widow and beneficiary of one insured under a policy of accident insurance, upon presentation to her of a demand by the representative of the insurer for an autopsy, a right to which was given by a provision of the policy, requested the representative to await the attendance of her attorney and discuss the matter with him, that the representative did so, and that, after such conference, the attorney, purporting to act for the widow, signed a statement refusing to permit the autopsy at that time and deferring consideration of the matter, and never later gave permission therefor, as a matter of law required a finding that such permission was refused by the widow acting through the attorney as her agent.

Evidence of the circumstances in which, on the afternoon of the second day after the death of one insured under a policy of accident insurance, the insurer presented to the widow, at the place where the body was and where the funeral was to be held the following morning, a request for an autopsy to which it was entitled, required a finding that the request was reasonable.

Evidence that, after the widow and beneficiary of one insured under a policy of accident insurance giving the insurer a right to an autopsy had refused to permit an autopsy preceding burial and had stated that she would defer decision as to permitting one after burial, she at various times forwarded proofs of loss to the insurer on forms furnished by it but at no time communicated to it her permission for an autopsy, and that, three months after the burial, the insurer, without ever having renewed its request for an autopsy, notified her that it had been denied the right to make it, would not have warranted a finding that the insurer had waived the defence of the widow's noncompliance with the provision of the policy relating thereto.

CONTRACT.  Writ in the Superior Court dated February 11, 1931.

The action was tried before *Collins*, J.  After the recording, with leave reserved, of a verdict for the plaintiff in the sum of $5,975, the judge ordered the entry of a verdict for the defendant and reported the action to this court for determination.

The case was submitted on briefs.

*J. L. Hurley, W. A. Torphy, & J. P. McGuire, Jr.,* for the plaintiff.

*D. J. Lyne & J. P. Rooney,* for the defendant.

PIERCE, J.  This is an action brought by Marietta C. Hurley, the beneficiary named in a certain accident policy issued by the defendant to her husband, Frank A. Hurley. The policy is dated February 4, 1930, and obligated the defendant to pay the plaintiff the sum of $5,000 if the insured died from the results of bodily injuries caused, directly and independently of other causes, by violent and accidental means.

At the conclusion of the evidence the defendant, in writing, moved that a verdict be directed in its favor.  This motion was denied and the case was submitted to the jury under leave reserved.  There was a verdict for the plaintiff for the principal and interest.  The judge ordered entered a verdict for the defendant, and reported the case for the consideration of this court, with the stipulation that "If the judge was right in his direction of a verdict for the defendant, judgment is to be so entered.  If the judge was wrong in directing a verdict for the defendant under leave reserved then judgment is to be entered for the plaintiff on the verdict in the sum of . . . $5,975."

The evidence, in its aspect most favorable to the plaintiff's contention, discloses that, on July 3, 1930, the insured stepped into the opening of a trap door, which was in the floor of a closet or cupboard connected with a bedroom, and sustained injuries.  This trap door opening was about two feet square, was level with the floor, and about six inches in from a woolen drapery, which was suspended in front of the closet and had to be pushed back for one to

enter.  The trap. door when opened went back toward the outer wall of the closet, and remained without fastening in that position.  The opening in the floor afforded access to a vertical ladder, six or seven feet in length, which led to a preserve closet in the cellar.  There was no witness to the insured's accident, which he described, in substance, as follows: He did not know that the trap door was open. He pulled back the drapery, above described, with his left hand and stepped into the closet.  His right foot went down into the opening, his left leg bent under him, he twisted and went down, and his lower back, just about on the buttocks on the right hand side, struck the edge of the floor.  He grasped a coat hanging in the closet, and attempted to pull himself up.  The coat slipped, but he pulled once more and succeeded in getting up.  Later on the same day, and on the four following days, the insured complained of dizziness and of pain in his back and head.  On July 8, 1930, at about eleven o'clock in the morning, the insured was engaged in conversation with several persons in a building in Barnstable, Massachusetts.  While so engaged he complained of a pain in the back of his head, and fell to the floor.  His face was very red, his lips and tongue were blue, and he gasped for breath.  His companions put him in an automobile and started for the hospital at Hyannis. On arrival at the hospital he was pronounced dead.

There was conflicting evidence as to the cause of the insured's death.  A medical expert, called by the plaintiff, testified that in his opinion the death of the insured was attributable to the accident.  As a basis of his opinion he said he believed that the fall of the insured and the blow received by his falling caused a blood clot in a vein, called "vena cava," which moved through the blood stream into the lung, causing death.  The only medical expert called by the defendant testified that in his opinion the insured had died from heart disease.  Both experts agreed that a rather simple autopsy would have established with certainty the cause of death.

During the trial the defendant admitted "that the proof of claim was seasonably filed, that as a proof of claim it

complied with the requirements as provided in the policy, [and] that in accordance with the terms of the policy seasonable notice of the death was given to the defendant."

On the night of July 8, 1930, the body of the insured was taken to his mother's house in Fall River. One Joseph L. Hurley, a brother of the deceased who acted as attorney for the plaintiff in all her dealings with the defendant after the death of the insured, had a talk on July 9, 1930, with one Guillette, an agent of the defendant, informed him of his brother's death, and was told by Guillette that he would report the death of the insured at the home office of the defendant. On July 10, 1930, at about ten o'clock in the forenoon, Thomas F. Hickey, superintendent of claims of the accident and health division of the defendant, talked over the telephone with Joseph L. Hurley. As a result of the talk, Hickey consulted certain doctors, and then prepared a letter (a copy of which is printed in the record), addressed to the plaintiff drawing her attention to standard provisions, section 8, of the policy, in regard to the right of the defendant to have an autopsy. This letter recites the necessity for an autopsy to determine the true cause of death of the insured, and requested an opportunity for the defendant to make an autopsy. Hickey, after the preparation of the letter, went to the house in Fall River where the body of the insured then was, and where preparations were being made for the funeral to be held on the following morning. He arrived at the house of the insured's mother at about two o'clock in the afternoon and there met the plaintiff. Something was said then, in the presence of the plaintiff and John Hurley, a brother of the insured, about an autopsy, and Hickey handed his written request to the plaintiff. Hickey was told by the plaintiff, or by John Hurley in her presence, to await the arrival of Joseph L. Hurley, the plaintiff's attorney. Hickey stayed at the Hurley house throughout the afternoon, but Joseph L. Hurley did not appear. He left the house at six o'clock in the evening, and returned at about seven. Joseph L. Hurley was then present. Hickey talked with Hurley and requested permission to make an autopsy. The written request and

a carbon copy were at hand throughout the conference. At the close of the conference Joseph L. Hurley wrote upon the written request for permission to make an autopsy and upon the carbon copy thereof the following: "I hereby refuse to grant the Metropolitan Life Insurance Company the privilege to make autopsy on the body of Frank A. Hurley, deceased, prior to burial but will defer decision as to permitting autopsy after burial, pending further investigation and consideration. MARIETTA C. HURLEY By her Attorney, (signed) JOSEPH L. HURLEY." Shortly after Hickey left the house and did not return. The insured was buried on July 11, 1930. At no time thereafter did the plaintiff or her attorney notify the defendant that it could make an autopsy after burial. On July 14, 1930, the defendant sent to Joseph L. Hurley the necessary forms for proof of claim in regard to the policy. Under date of October 8, 1930, the defendant received the complete proof of claim, and on October 17, 1930, it notified the plaintiff's attorney that the defendant had been denied the right to make an autopsy in accordance with the provisions of the policy.

By the "Standard Provisions" of the policy, section 8, it is provided that "The Company shall have the right and opportunity to examine the person of the insured when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to make an autopsy in case of death where it is not forbidden by law." It is universally held that the foregoing provision in an accident policy is a reasonable provision for the proper protection of the insurer against fraudulent claims, and also against claims which, although made in good faith, are not valid. *Sheehan* v. *Commercial Travelers Mutual Accident Association,* 283 Mass. 543, and cases collected at page 549. When demand by the insurer is reasonably made of the insured or of the beneficiary, compliance with such provision becomes a condition precedent to the right to request compensation for the injury or payment of the loss, and the burden of proving compliance, excuse for noncompliance, or waiver of defence based upon

noncompliance, rests upon the insured or the beneficiary of the insured. *Sheehan* v. *Commercial Travelers Mutual Accident Association,* 283 Mass. 543, 549–550, and cases cited. The plaintiff and the defendant agree that the plaintiff, widow of the insured and beneficiary under the insurance policy, had the right of possession of the body of the insured for the purpose of burial or other lawful disposition, including an autopsy, in the absence of a different provision by the deceased. *Vaughan* v. *Vaughan,* 294 Mass. 164, 166. *Clay* v. *Aetna Life Ins. Co.* 53 Fed. (2d) 689. The undisputed evidence shows that the defendant, prior to the burial of the insured, made a demand on and request in writing of the plaintiff for permission to make an autopsy on the body of the insured. This writing contained a request that the plaintiff signify, in writing, her assent to or dissent from the proposed autopsy to be performed before or after burial. The plaintiff through her agent refused in writing to grant permission for an autopsy before burial and stated, in writing, that she would defer her decision as to permitting an autopsy after burial pending further investigation and consideration — and thereafter she never communicated to the defendant her permission for an autopsy.

The plaintiff's contention, and reply to the defendant's position, is that there is no direct evidence in the record that Joseph L. Hurley was ever given specific authority either to grant or to refuse an autopsy, and that upon the evidence most favorable to her there is no evidence that any request or demand for an autopsy was made upon her. In support of her position she invokes the rule that while an attorney has broad powers in respect to the management and prosecution of a case affecting the remedy, he cannot do things which impair the cause of action without specific authority from his client. *Friedberg* v. *Jablon,* 287 Mass. 510, 514. *Butter* v. *Sovrensky,* 275 Mass. 88. *Moulton* v. *Bowker,* 115 Mass. 36, 40. This position is met and overcome by the undisputed testimony of Hickey that he remained at the house where the body of the insured was, at the request of the plaintiff, from two o'clock in the afternoon of July 10, 1930, until six o'clock of that day, in order

to discuss the matter of the autopsy with the plaintiff's attorney, Joseph L. Hurley; and that after the interview with the said attorney the paper was signed.

On all the facts, taken in the aspect most favorable to the plaintiff, we think the jury were required to find, as a matter of law, that the request for an autopsy was reasonable as a demand and as to the time when it should be had.

The evidence on the question of waiver was entirely independent. It appeared that after the defendant had made its request for an autopsy the plaintiff through her attorney refused to permit an autopsy before burial, and stated in writing that she would "defer decision as to permitting autopsy after burial, pending further investigation and consideration." The plaintiff forwarded proofs of loss to the defendant at various times after July 14, 1930, and on October 17, 1930, it notified the plaintiff that its demand for an autopsy had been refused. Waiver of the defence of noncompliance with the provision in question could not have been inferred in the circumstances of the case at bar.

Upon consideration of the whole case, we are of opinion that the jury would not be warranted in finding (a) that the plaintiff complied with the condition in question, (b) that the plaintiff was excused from compliance, or (c) that the defendant waived the defence of noncompliance. The judge was right in ordering entered a verdict for the defendant. It follows that judgment is to be entered for the defendant, and it is

*So ordered.*