G. N. MILLER, Appellee, v. HARRISON COUNTY, IOWA, Appellant.

**APPEAL AND ERROR:** Predicating Error on Invited Action of
1 **Court.** One may not invite the court to proceed on a certain theory and then, after the court has accepted the invitation and acted, predicate error thereon.

PRINCIPLE APPLIED: Plaintiff, in a buggy, was driving down hill. The neckyoke broke, the tongue fell, the buggy crowded upon the horses, the team became frightened, ran away, went upon the graded approach to a bridge, the buggy swerved, went off the grade, barely missing the bridge, and plaintiff was injured. The bridge had been constructed narrower than the law commanded. Whether this negligence was the proximate cause of the injury was problematical, but defendant asked the court to instruct the jury to pass upon the question *whether the narrowness of the bridge was the proximate cause of the injury.* The court complied with the request. The jury found in the affirmative. *Held,* the defendant could not predicate error on such action of the court.

**BRIDGES:** Approaches—Failure to Maintain Barrier—Negligence.
2 The failure to maintain a railing or barrier along the *approach* to a bridge may constitute negligence. Much depends on whether

the situation is such as to indicate danger of being precipitated over the embankment without such barrier.

**EVIDENCE:   Expert Opinion—Suitableness of Neckyoke.**  A blacksmith, shown to be qualified, may properly testify that a certain neckyoke was suitable for the use to which it was being put and was the best made.

**EVIDENCE:   Expert Opinion—Physicians—Probable Result of Injuries.**  A physician who has personally examined and treated an injured person may give an opinion as to what will be the natural and probable result of the injuries.

**TRIAL:   Instructions—Basis, Sufficiency of.**  Where there was evidence tending to show that an injured party had acknowledged having an insecure neckyoke and had used it on the occasion when he was injured, *held*, the record justified an instruction to the jury to determine whether the acknowledgment had reference to the neckyoke used on the occasion when the party was injured or to some other neckyoke.

*Appeal from Crawford District Court.*—HON. M. E. HUTCHISON, Judge.

TUESDAY, SEPTEMBER 21, 1915.

ACTION for damages alleged to have been caused by a defective bridge and want of railing resulted in judgment against the defendant, from which it appeals.—*Affirmed.*

*C. W. Kellogg, Dewell & McLaughlin,* and *Sims & Kuehnle,* for appellant.

*H. L. Robertson* and *Harding & Kahler,* for appellee.

LADD, J.—The highway extended east and west over a creek or stream, over which was erected a county bridge 54 feet in length.  The plaintiff resided at the top of the hill about 200 yards west of the bridge.  There was a gradual 5 per cent. descent in the highway towards the bridge.

In the evening of January 17, 1913, plaintiff, with his team and buggy, accompanied by his wife, started for Woodbine; and upon reaching the road the neckyoke broke and let

the tongue fall to the ground. The plaintiff attempted to stop the horses, but the buggy running against them started them, and as they went towards the bridge this was repeated several times. According to plaintiff's testimony, when near the west end of the bridge the tongue and buggy turned to the north, going down a high embankment to the creek below, injuring the plaintiff, while the team went on the bridge and stopped. The petition alleges that plaintiff was without fault, and that defendant was negligent, (a) in constructing and maintaining the bridge and approach too narrow, that is, 13 feet 6 inches wide, and (b) in omitting to place railings or guards along the approach so as to protect travelers against the danger in its use as well as that of the bridge. Appellant contends that the evidence was insufficient to carry the last two issues to the jury.

I. The bridge at the west end was 13 feet, 6 inches wide and the top of the fill, 11 feet and 10 inches wide. This fill was about 30 inches above the natural surface of the ground and extended westerly 34 feet from the bridge. The end of the bridge was set back on the bank somewhat and rested on mud sills, consisting of four planks. From the northwest corner of the bridge, the ground, for about 5 feet and to the bank, was nearly level, and from there on, the fall was abrupt down to the stream, many feet. There was a tree about 6 feet north of this corner of the bridge, and the fill next the bridge began to slope from about 18 inches south of the north edge of the bridge. The testimony in behalf of plaintiff tended to prove that the tongue of the buggy did not turn off the approach until it was very near the bridge,—one witness estimated the distance as low as a foot,—and that the right wheel of the buggy passed not farther than 15 to 18 inches north of the northwest corner of the bridge. The evidence of the defendant tended to show that the buggy must have left the grade farther to the west; but the jury might have found the facts to have been as recited, and if so, that, had the bridge been of the width exacted by statute, the tongue might not

have left the grade as it did, and that the buggy would have caught on the bridge railing and, in view of the nature of the ground and the location of the tree, that the injury might have been averted.

It is argued that even if the wheel would have caught the railing, the probability of plaintiff's not being thrown on the ice below is remote and conjectural, and therefore ought not to have been left to the jury. Of course, the defendant was negligent in that the board of supervisors in 1903 constructed the bridge in utter disregard of the requirement of law that it be at least 16 feet wide, but this does not aid in ascertaining whether such negligence was the proximate cause of the injury. Had the defendant consistently insisted upon the position now being taken, we should have experienced much difficulty in determining the issue; but at the trial it requested at least two instructions, submitting the issue to the jury. We quote from the last, which, in substance, was incorporated in instructions given by the court:

1. APPEAL AND ERROR: predicating error on invited action of court.

"But you are instructed that the burden is upon the plaintiff to show, not only that the bridge in question was less than sixteen feet in width, but that if the bridge had been in fact sixteen feet in width, not only would the right fore wheel of plaintiff's buggy have caught on the same, but also if it had so caught on or struck said northwest corner of the bridge the accident would have been averted and the plaintiff would have escaped injury. In other words, as elsewhere in these instructions explained, unless the plaintiff shows by a fair preponderance of the evidence that the fact, if it be a fact, that the bridge was less than sixteen feet in width, was one of the contributing causes to the accident and injury of the plaintiff, there can be no recovery by the plaintiff."

Having induced the court by requested instructions to submit the issue to the jury, or thereby indicating its acqui-

escence therein, a party cannot thereafter raise objections to the action of the court in adopting what he has proposed. *Light v. Railway,* 93 Iowa 83; *Spicer v. Webster City,* 118 Iowa 561; *Campbell v. Ormsby,* 65 Iowa 518; *Hahn v. Miller,* 60 Iowa 96; *Fenner v. Crips Bros.,* 109 Iowa 455.

II. There appears to have been an adequate railing on the bridge, and the court submitted to the jury whether, in the exercise of reasonable diligence and care, the officers of

2. BRIDGES: approaches: failure to maintain barrier: negligence.

the defendant should have placed a barrier or guard along the approach. Appellant contends that the evidence was not such as to raise this issue. It will be recalled that the approach was down a steep hill; that immediately west of the bridge the grade had been raised considerably above the surface; that a ditch had been washed on the north side of the grade; and that the bank of the stream was rough and steep and extended in a north'westerly direction very near the corner of the bridge. In the event of any mishap with vehicle or team in passing on the grade or otherwise, which might turn the traveler from the beaten track, the situation was such as to indicate danger of being precipitated over the embankment. This could have been guarded against by a barrier or guard at small expense, extending but a short distance, and we are of the opinion that it was for the jury to say whether the defendant, through its officers, in the exercise of reasonable care for the protection of travelers making use of the highway, ought to have constructed such guard rail or barrier along the approach. Though the danger to be guarded against was the abrupt descent from the embankment, the court rightly advised the jury that the defendant was under no obligation to extend a railing along the stream. Such, of course, might have obviated the necessity of a guard rail along the fill, but it was the approach to the bridge along which the defendant was bound to protect travelers against dangers incident to leaving such approach, if such protection was required. We are of the opinion that the issue was rightly

submitted to the jury, and it was for that body to say not only whether there should have been a barrier, but whether, had there been such, the injury to plaintiff would have been averted.

III. The occupation of the plaintiff was that of farmer and blacksmith. He testified that he had bought the neckyoke which gave way about a year before, that the center fastening was a ring with a swivel bar and a bar under-

3. EVIDENCE: expert opinion: suitableness of neckyoke.

neath; that he had been repairing neckyokes and using them for 15 or 20 years and was familiar with the different kinds; and he was then asked: "What do you say, Mr. Miller, the fact is as to that being one of the best and safest and latest kinds of neckyokes in use in that part of the country at that time?" An objection as calling for a conclusion of a witness was overruled, and the witness answered: "To my judgment they are the best neckyokes that is made in these later days. It is the best attachment to the tongue." The witness had qualified as an expert, and though the question was perhaps somewhat extreme, his answer indicated that the witness had reference to the kind or class of neckyokes and the attachment thereto. Whether it was suitable for the purpose and such as was being used was clearly competent, and there was no error in the ruling.

IV. Dr. W. S. Payne treated the plaintiff during his sickness, and testified that he had two ribs, on the left side, fractured, a laceration of the ligaments of the back, and a contusion of the abdomen, and was then

4. EVIDENCE: expert opinion: physicians: probable result of injuries.

asked, "What would be the natural and probable result of an injury of that kind to the rib that you have described?" This was objected to as calling for a conclusion and not being the subject of expert testimony; also that it called for the fact and not the present condition, and was not confined to the case in question. The objection was overruled; and the witness testified that, "Ordinarily, those ribs will unite and become strong. . . . In many cases the end of the rib might have pressed

the pleura, causing pleurisy, and after the pleurisy had sub-sided might have caused adhesion of the pleura that would give him some trouble in the future." There was no error. The witness was testifying as an expert and therefore might express his opinions, and moreover it was competent for him to testify as to the probable future condition of the patient in consequence of the injuries received. The inquiry was con-fined to the case, inasmuch as he was telling the probable consequences of injuries of that kind. The authorities sup-porting the proposition are too numerous for citation.

One Barnum testified that he reached Miller shortly after the accident, when the latter said, "If the old neckyoke hadn't broke it would not have happened," and that Barnum re-sponded, "I told you last spring that you was using that too long," when plaintiff replied that he ought to have got a new one. Barnum went on: "I had seen that neckyoke before along the fore part of March, and had warned Miller that the neckyoke ought to be discarded, that it was too badly worn for use, and Miller had said that he was not able to get a new one." Miller denied both conversations entirely, and testified that he bought a new neckyoke about a year before the accident. The court, among other things, instructed that the jury might take into consideration the conversation had, if any, between plaintiff and Barnum, and whether "the plaintiff had reason-able grounds to believe that said neckyoke was in an unsafe condition, and whether the talk, if any, between said Albert Barnum and the plaintiff had reference to the neckyoke used by the plaintiff at the time of the accident, or whether it had reference to some other neckyoke." Appellant excepts to this instruction on the ground that there was no evidence that any neckyoke other than the one used at the accident was referred to. As Barnum described the neckyoke as one very old and nearly worn out, and the plaintiff testified that he was using a neckyoke purchased a year previous, which was in good condition, the jury might have inferred that

5. TRIAL: instruc-tions: basis, sufficiency of.

they were talking about different neckyokes, and therefore there was no error in the instruction. Some other matters are discussed, but they do not require further attention, and the judgment is—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.