KATHRYN B. ROBERTSON, Appellee, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

No. 45942.

NOVEMBER 17, 1942.

Sargent, Spangler & Hines, of Cedar Rapids, D. C. Nolan, of Iowa City, and Louis W. Dawson, of New York City, for appellant.

Messer, Hamilton & Cahill, of Iowa City, for appellee.

MITCHELL, J.—Kathryn B. Robertson, as beneficiary under a policy of life insurance in the amount of $2,500, issued by the Mutual Life Insurance Company of New York to her husband, Henry D. Robertson, commenced this action to recover from the insurance company an additional $2,500 under the double-indemnity provision of the contract, alleging that Henry D. Robertson died as a direct result of bodily injuries effected solely through external, violent, and accidental means, independently and exclusively of all other causes. The defendant admitted that it was a corporation, that it issued the policy of insurance, that the premiums had been paid up to the time of the death of Henry D. Robertson; and admitted that upon the furnishing of due proof in accordance with section I of the policy the beneficiary would be entitled to double indemnity. The insurance company in its answer alleged affirmatively that the proof of death furnished did not contain due proof of accidental death as provided by the policy; and further alleged that under the terms of the policy it had a right to examine the body and to have an autopsy performed; that it had demanded the opportunity to perform an autopsy upon the body of the insured, which was refused. A reply was filed by the appellee. There was a trial, and at the close of the evidence the insurance

company made a motion for a directed verdict, which was overruled, and the case was submitted to the jury, which returned a verdict in favor of the plaintiff, as prayed. The Mutual Life Insurance Company of New York, being dissatisfied, has appealed to this court.

Appellant argues that the court erred in overruling its motion for a new trial on the ground that the verdict was contrary to the evidence. So we turn to the record to ascertain the facts.

Mr. Robertson, on November 5, 1938, had suffered a cerebral hemorrhage resulting in paralysis of his left side. As a result of this he was in the Veterans' Hospital at Des Moines for several weeks. He was suffering from what is known as hardening of the arteries and he had very high blood pressure. In January 1939 he returned home from the hospital. He was up and around the house on crutches, visited with his friends and relatives, showed slow but steady recovery. He could use his left hand and arm. He had varied systems of exercises. He was able to comb his hair, brush his teeth, dress himself, shave himself, and was walking with the aid of one crutch used under his left arm. While going through the kitchen .to the back porch to an improvised toilet on the afternoon of March 21, 1939, the insured fell and fractured his hip. He was removed to the hospital at Iowa City. The doctor who attended him stated that he talked rationally and coherently after the accident. An X-ray picture was taken, which revealed fracture of the neck of the left femur right up close to the head. He was placed in bed and what medical men call a Buck's extension and a Boehler' frame were used in order to reduce the fracture. From the time he went to the hospital on the evening of March 21, 1939, up to the time of his death, he was kept in bed on his back, it being impossible to turn him very much either way. During the first two weeks there was an improvement in his general condition, but after the third week he began to have increased lung signs, which progressed each day until there was evidence of hypostatic pneumonia. It was the judgment of the medical men that Henry D. Robertson died of hypostatic pneumonia, which was caused by the fact that he was forced to

remain in a set position for a long time in treatment of the fracture of his hip. He died on April 20, 1939.

In the appellant's argument it is stated:

"It is undisputed that the man suffered an attack of some sort on March 21, 1939."

With this statement we cannot agree. There is a dispute in the evidence in regard to whether he suffered an attack on March 21, 1939. Several witnesses testified that after he had fallen on the floor he could carry on a conversation in a coherent, intelligent manner, and the doctors who were the attending physicians denied that he had an attack. As we read this record, there is evidence from which a jury could find that it was not a cerebral hemorrhage on March 21, 1939, that caused the injury, to wit, the broken leg, but instead it was a fall, an accident; that he slipped on the floor of the kitchen and fell in such a way as to break his leg. True, there is contrary evidence. It was a disputed fact question for the jury to decide and the lower court was right in submitting same.

Appellant argues that the court erred in not sustaining its motion for a directed verdict, one of the grounds of which was that under the terms of the policy it was a condition precedent to the right to recover that the beneficiary furnish due proof that the death of Mr. Robertson occurred as a result of bodily injury effected solely through external, violent, and accidental means and not directly or indirectly from disease or bodily or mental infirmity, and that a compliance therewith must be shown by the appellee before there can be any liability on the part of appellant. Such due proof was not furnished as required.

The provision of the contract is without dispute that the double-indemnity benefit was payable only upon receipt of due proof that the death resulted from bodily injury effected solely through external, violent, and accidental means and exclusive of all other causes, and that the indemnity would not be payable if the death resulted directly or indirectly from disease or bodily infirmity. The only proof of death furnished by the appellee was the proof identified as Exhibit 2, consisting of two parts, one the part to be signed by the beneficiary, and the

other to be signed by the attending physician. The first part was signed by Kathryn B. Robertson, the claimant, and is dated April 24, 1939. It sets out the number of the policy, and that Henry D. Robertson, the insured, died on April 20, 1939, and certain other information required. Under heading 13 of the proof is the following:

"(a) When did the health of the deceased first begin to be affected? November 5, 1938.

(b) Duration of last illness resulting in death? Thirty days.

(c) Principal cause of death? Fracture neck left femur 3/21/39. Hypostatic pneumonia one week."

If that was the entire proof that was furnished, it is hard to believe that anyone would argue that it did not in itself show that the death was caused by an accident. However, on the forms used, which were forms furnished by the insurance company, just before the signature of the claimant there was printed this statement:

"I refer you to each attending physician's certificate furnished by me herewith which I have read, and ask that it be received as a part of the proof of death."

There was only one attending physician's certificate which was attached. It was signed by Dr. Matt Ware, the attending physician, of West Branch, Iowa. Many questions are asked, which were answered, and No. 8 of the statement signed by the doctor is as follows:

"(a) State the principal cause of death. Fracture neck left femur 3/21/39. Hypostatic pneumonia one week.

(b) Contributory causes of importance (With date of onset of each). Second cerebral hemorrhage 3/21/39 with fall causing fracture.

(c) Was last illness complicated by any previous illness or infirmity acute or chronic? If so, state what and when. Cerebral Hemorrhage Nov. 5, 1938 with left sided paralysis.

(d) If from any cause other than a disease state the medical and other facts connected therewith. None.

(e) Did an accident or external injury contribute in any way to insured's death? If so, give full details. Second cerebral hemorrhage with a fall with fractured femur.''

It is the contention of the appellant that because of the statement made by the doctor, which was attached to the proof, the proof shows that it was not an accidental death but rather that it was caused by a second cerebral hemorrhage. What is meant by due proof? It certainly cannot mean proof satisfactory to the insurer and that the insurance company is the sole judge. Due proof can mean no more than that reasonable evidence of disability within the terms of the policy shall be submitted to the company. See Forman v. New York L. Ins. Co., 267 Mich. 426, 255 N. W. 222.

In the case at bar, the proof furnished by claimant in her statement shows clearly that she was claiming the principal cause of death was the fracture of the neck of the left femur on March 21, 1939. The insurance company relies entirely upon the statement of the doctor, which was attached to the proof, that one of the contributing causes was the second cerebral hemorrhage. The doctor's statement is a little inconsistent. He states first that the principal cause was the fracture and later that a contributing cause was the second cerebral hemorrhage, but there can be no doubt in the mind of anyone that reads this record that the insurance company knew when they received this proof that there was being made a claim for double indemnity. In the case of Garden v. New England Mut. L. Ins. Co., 218 Iowa 1094, 1098, 254 N. W. 287, 289, this court quotes with approval from the opinion in Carson v. New York L. Ins. Co., 162 Minn. 458, 203 N. W. 209:

'' 'The second contention is that the proof furnished did not make out a prima facie case of disability. Where a policy is payable upon due proof of death of the insured, it is readily seen that, as a rule, no trouble is met with in furnishing conclusive proof. But in a case of this nature, where the insured may not be able to obtain other testimony than his own of a disability which entitles to the insurance, we do not think he should be debarred from presenting his proof in court, if it be not taken as due proof by the company. The policy does not

provide such an unreasonable requirement as that the proof of loss must be satisfactory to the insurer. It simply provides for due proof. It does not call for medical proof. The company was advised of the accident and the claim that plaintiff was disabled. His own affidavit of disability was furnished defendant in time, on May 5, 1921, wherein he states that he has been wholly disabled since the 24th of November, 1920, (the time of his injury) "and will presumably be permanently, continuously, and wholly prevented thereby for life from pursuing any and all gainful occupations"; and he therefore claimed the disability benefit under the policy. That neither the physician who attended him, nor the one designated by defendant to give an opinion, then thought the disability permanent, and so stated in their affidavits, should not conclude plaintiff. That was only their opinion, which, according to the finding of the court and jury, proved incorrect. It must therefore be held that, when the proof plaintiff did present to defendant by his own affidavit of total permanent disability has been found true, it should be deemed sufficient as due proof under the requirements of the policy, even though he was unable to be fully corroborated by the opinions of the doctors mentioned.' ''

The appellant relies to a great extent upon the case of Wachtel v. Equitable L. Assur. Soc. of the United States, 266 N. Y. 345, 351, 194 N. E. 850, 852. A reading of that case, however, shows that it was the contention of the majority of the court that the proofs of death furnished were not only insufficient "to show death caused exclusively by accidental means, but showed affirmatively that death was due to disease." Later in that opinion we find the following statement:

"We have said in other cases that the requirement of due proof is to be liberally construed in favor of the insured. (Glazer v. Home Ins. Co., 190 N. Y. 6.) It may be satisfied where 'such reasonable evidence [is furnished] as the party can command at the time, to give assurance that the event has happened, upon which the liability of the insurers depends. * * * The purpose of the condition is that the insurer may be able intelligently to form some estimate of his rights and liabilities

before he is obliged to pay.' (O'Reilly v. Guardian Mut. Life Ins. Co., 60 N. Y. 169, 173.) We apply that test here. The proof submitted by the claimant showed, until explained, that the claimant was not entitled to double indemnity. No explanation of the admission that death was due to disease, and no proof that in fact death was due to accident, was ever furnished to these companies.''

There was a very able dissenting opinion in that case, joined in by one of the other members of the court. We quote from the dissent, at page 354 of 266 N. Y., page 853 of 194 N. E.:

''I am unable to agree with the conclusion that the application of those principles requires the dismissal of the complaint. I believe that such conclusion is directly contrary to many decisions of this court and in conflict with the decisions in almost every other State.

''The requirement of the policies is that due proofs shall be served. There is no limit of time specified within which such proofs shall be served. No form of proofs is specified. The policies do not specify of what the proofs shall consist or by whom they shall be made. The words 'due proof' do not have a narrow, technical meaning. Any information furnished the company which puts it in possession of the necessary facts and upon which it acts may constitute 'due proofs.' * * * The Equitable did not in any way object to the sufficiency of the proof of death, but proceeded to act upon it. It did everything that it could have done if the proof of death had made the specific claim that death was due to the specific injury to the leg and claimed double indemnity.''

In the case at bar there is a vast difference in the proof furnished and that furnished in the case of Wachtel v. Equitable Life Assurance Society. The claimant, Mrs. Robertson, in her statement in the proof stated specifically that the principal cause of death was ''fracture neck left femur 3/21/39. Hypostatic pneumonia one week.'' So from the very hour that this proof was received, this insurance company knew that an accident had occurred.

■ But we do not have to decide here whether or not due proof was given, as it seems to us that there was a waiver of .proof. The policy in this case did·not require. proof to be furnished on forms submitted by the company nor did it require medical proof. However, the proof was submitted on forms submitted by the appellant and they were mailed April 24, 1939, which was the fourth day after the death of the insured. On May 2d the agent of the insurance company called on the appellee with a check for $2,500 to pay for the death loss, but did not offer to pay the double indemnity. The draft. was refused. On May 6th the company wrote the following letter to Mrs. Robertson:

''The Mutual Life Insurance Company of New York
Bureau of Disability Claims
34 Nassau Street
New York

May 6th, 1939

Mrs. Kathryn B. Robertson
West Branch, Iowa.
Re: Henry D. Robertson, Deceased.
Policy No. 4279,225.

Dear Madam:

Referring to the claim made by you under the above numbered policy, in which you stated in the claimant's certificate that the principal cause of death was 'Fracture neck left femur 3/21/39; Hypostatic pneumonia one week,' the policy contains a provision that 'the Company shall have the right and opportunity to examine the body and make an autopsy unless prohibited by law.'

We have just been informed that you wish to make claim for double indemnity under this policy. The proofs which have been submitted do not show that death resulted from external, violent and accidental means independently and exclusively of all other causes within the double indemnity clause of the policy.

In view of the foregoing it will be necessary for the Company to make an autopsy on the body of Henry D. Robertson.

On account of the manner in which the Insured met his death, we believe that an autopsy will go a great way towards helping us to determine whether the death was due to accidental means. We are anxious to cooperate with you in every way and for that reason we are asking you to permit us to make the autopsy. The Company will, of course, be satisfied to pay the expenses of the exhumation and reinterring of the body. If you will kindly advise us the name of the undertaker, the date, place and time, we will be very glad to have a pathologist present to make the autopsy. Will you please sign the enclosed paper permitting the Company to make the autopsy? It will be satisfactory to the Company if you desire to have your own physician present at your expense.

Trusting to hear from you immediately, I am

Very truly yours,

RWL:AD A. H. McKinley

Superintendent RWL"

Thus we find by the written evidence of the appellant itself it knew on May 6th that a claim for double indemnity under the policy was being made, and it asked for the right to perform an autopsy, which the company thought would be of great help to determine whether the death was due to accidental means. The record then shows that the appellant sent not one but two investigators to see Mrs. Robertson on different occasions. She took one of these agents of the company into the kitchen and showed him the place where Mr. Robertson fell and how it was claimed Mr. Robertson fell. He asked her to sign a certain statement giving him the right to secure certain reports kept by the hospital in regard to the condition of Mr. Robertson while he was there. She did this and the company secured the reports. From May 6, 1939, down to September 5, 1939, various letters passed back and forth between the appellant and the appellee, but at no time did this insurance company ever point out any defect in the proofs furnished or ask for any additional proof or claim that the proof made was insufficient. Finally, on September 5, 1939, the company wrote the following letter:

"Davenport, Iowa
Sept. 5, 1939

Mrs. Kathryn B. Robertson
R. F. D. No. 2
Box 51
West Branch, Iowa
Dear Mrs. Robertson: Pol. No. 4,279,225.

We are today advised by the Company that at the time proofs of death were received, it did not appear that death was the result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes within the double indemnity clause in the policy. Consequently, the face amount only was paid.

Immediately upon receipt of notice that claim for double indemnity was being made the Company requested permission for an autopsy on the body of the above deceased, to which it is entitled under the terms of the contract. You, however, have declined to give the Company such permission. Furthermore, investigation has been made and the information obtained does not indicate that you are entitled to double indemnity under the terms of the policy.

Therefore, double indemnity is not payable.

The above statements of our reasons for failing to allow double indemnity are made without prejudice to the right of this Company to assert any and all other reasons it may have for refusing payment of double indemnity.

Yours very truly,
Loyd B. Gettys,
Manager.''

The appellant argues that the reason why payment was not made was on account of the failure to furnish due proof. But it will be noted that in the letter above quoted, which was the last one written, the company specifically stated that from the investigation and information obtained, the appellee was not entitled to double indemnity under the terms of the policy. In the case of Dyer v. Des Moines Ins. Co., 103 Iowa 524, 531, 72 N. W. 681, 683, this court quoted with approval from Wood on Insurance, 968, as follows:

" 'It seems to be settled beyond dispute that, where there are defects in the proofs of loss, whether formal or substantial, or, indeed, in any respect which could have been supplied if specific or other objections had been made thereto by the underwriters, a failure on their part to object to the proofs upon that ground, or to point out the specific defect, or to call for the information omitted, within a reasonable time, is considered a waiver, however defective, informal or insufficient such proofs may be.' "

In the case of Richardson v. Farmers Mut. H. Ins. Assn., 214 Iowa 30, 31, 241 N. W. 414, 415, this court said:

"The rule is well established that a denial by the insurer of all liability under the policy will operate as a waiver of the provisions requiring notice and proofs of loss, or any defects in notice of proofs."

And in the case of Dawson v. Bankers Life Co., 216 Iowa 586, 598, 599, 247 N. W. 279, 285, this court said:

"If there were any defects or insufficiencies in the proofs furnished, the failure of defendant to object thereto or to point out specific defects, or call for additional information, would be a waiver of further proof." (Citing many Iowa cases.)

And later on in the Dawson case we said:

"It is also the law of this state that, where the insurer denies all liability under a policy, such denial operates as a waiver of proofs of loss, or defects in proofs already furnished."

The appellant contends that the Dawson case does not apply because in the Dawson case an amendment to the proof was filed. This is true, but we cannot see where that makes any difference, because it was the contention of the insurance company there, as it is here, that the proof, once made, could not be amended or changed. Here, over a period of several months the insurance company lulled the appellee into a sense of security and led her to believe that it was considering her case upon the merits and not upon the question of whether or not due proof was made. It sent investigators to her who were told the whole story. It

corresponded with her, and then in September, a matter of better than four months after it had first received the proof of death, it denied liability upon the double-indemnity provision of the policy. Upon the facts set out in this record, we can come to no other conclusion than that the appellant by its acts waived the requirement of the policy in regard to due proof.

It is next argued that the lower court erred in not directing a verdict for the appellant upon the ground of the motion that the contract of insurance provided that the company should have the right and opportunity to examine the body and perform an autopsy unless prohibited by law, and that the appellant under date of May 6, 1939, wrote to the appellee requesting permission to have an autopsy performed. There is nothing in the law of Iowa that would prohibit the autopsy.

On May 13, 1939, the appellee refused to grant permission. The evidence, without conflict, shows that an autopsy would have shown whether or not a second cerebral hemorrhage had occurred and whether that was a contributing cause of insured's death. The provision for an autopsy was a part of the contract, Exhibit 1, and binding upon the appellee. It is true that the policy contained the provision that the company would have the right and opportunity to examine the body and to have an autopsy performed. The appellant cites cases which hold that the refusal to permit an autopsy, if a demand thereof is reasonably and seasonably made, constitutes a breach of the contract. Howes v. United States Fid. & Guar. Co., 9 Cir., Wash., 73 F. 2d 611; Hurley v. Metropolitan L. Ins. Co., 296 Mass. 130, 5 N. E. 2d 16; Gould v. Travelers Ins. Co., 270 N. Y. 584, 1 N. E. 2d 341. This question has never before been submitted to this court. The demand for the autopsy was made in the letter dated May 6, 1939, which is set out in this opinion. Enclosed in this letter, with the request that it be signed and returned to the company, was the paper which is marked **Exhibit 5**, which is as follows:

> "Re Henry D. Robertson, Deceased.
> Policy No. 4279,225.
> To THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK:
> Referring to the request made by you for permission to

make an autopsy on the body of Henry D. Robertson, the Insured under the above numbered policy, you are hereby authorized to have such an autopsy made, and the pathologist who makes the autopsy is authorized to remove from the body any organ or any portion of the body which may be necessary for him to remove in order to enable him to satisfactorily complete the autopsy, and to retain such organ or organs or other portions of the body as may be necessary.

Any expense incurred by making the autopsy must be borne by your Company.

..................................................................................."

The letter and Exhibit 5 must be considered together for the two are the demand which was made. The appellant did not ask permission simply to perform an autopsy but it asked permission ''to retain such organ or organs or other portions of the body as may be necessary.'' Nowhere in the policy is it given the right to retain parts of the body. All of the cases hold that the demand for an autopsy must be a reasonable demand and must be seasonably made. In the case of Employers' Liability Assur. Corp. v. Dean, 5 Cir., Ga., 44 F. 2d 524, 525, the insurance company, ten days after the death of the insured, wrote the widow requesting an autopsy and enclosed certain documents for her to sign, giving her consent. After some exchange of correspondence, nothing further was done by the company. The circuit court of appeals, in holding that the demand must be considered in its entirety, and that it was unreasonable, stated:

''However, in this case the request for an autopsy was unreasonable. The idea of an autopsy was no doubt abhorrent to Mrs. Dean, and the fact that the company advised her that several days would be required to perform it, involving disinterment and custody of the body for that period, when an hour or two would have been sufficient, justified a refusal or a failure to assent. She was under no obligation to initiate the proceedings for the autopsy.''

The court then went on to say:

''It is not shown that appellant could not have procured the

autopsy by proper proceedings despite appellee's silence. It was not error for the court to withdraw this question from the jury on the facts shown."

See, also, Massachusetts Bonding & Ins. Co. v. Duncan, 166 Ky. 515, 179 S. W. 472.

In the case at bar, the demand for the autopsy included the right to retain certain portions of the body of the deceased. No such right was given by the policy. The demand here made was an unreasonable one. It was necessary for this appellee to agree under the company's request that she permit not only the autopsy but the removal of such parts of the body of her deceased husband as in the judgment of the insurance company was necessary. We hold that the lower court was right in overruling this ground of the motion for a directed verdict because of the unreasonableness of the demand, and that the policy did not give appellant a right to retain parts of the body.

 It is next argued that the lower court erred in withdrawing from the jury the defense of failure to furnish due proof of death. With this we cannot agree. There was no question of fact to be submitted to the jury. There was no dispute concerning the submission of proof of loss and the correspondence pertaining to same. In 29 Am. Jur. 1161, 1162, section 1539, it is stated:

"* * * it is generally held that the sufficiency of proofs of loss is a question of law where different inferences cannot reasonably be drawn from the evidence relating thereto or where the question depends merely upon the intrinsic sufficiency or construction of the documents furnished for such purpose."

The question of whether or not due proof was furnished, there being no dispute of any kind in regard to the facts, was a question of law for the court.

It is next argued that the lower court erred in withdrawing from the consideration of the jury the defense asserted by the insurance company that under the terms of the policy the company had the right to examine the body and to make an autopsy unless prohibited by law. We have held earlier in this opinion that the demand in this case was for more than an

autopsy. It was a demand for permission to retain portions of the body. Such demand was an unreasonable one. In view of this, the court was right in refusing to submit this issue to the jury.

■ It is next argued that the court erred in the statement of the issues to the jury. This is argued in two divisions by the appellant. The complaint is that the court failed to make certain statements in the issues in that it did not call to the attention of the jury the conditions set forth in section I of the policy. As we read the complaint of the appellant, it would have had the court submit in the statement each and every allegation of the pleadings. This court has on numerous occasions condemned the custom of copying verbatim the pleadings in the court's instructions. In the case of Elmore v. Des Moines City R. Co., 207 Iowa 862, 867, 224 N. W. 28, 30, this court said:

"The court in Instruction No. 1 gives a statement of the grounds of negligence claimed by the plaintiff. The appellant further complains that, in this manner, all of said grounds of negligence were submitted to the jury, and that there was no evidence tending to establish some of the same. There is no merit in this contention of the appellant's. Instruction No. 1 was only a preliminary statement. In a subsequent instruction, the court specifically told the jury upon what grounds of negligence a recovery could be had, and no exception to said instruction was taken by the appellant."

In the case at bar, the instructions which follow the statement of the issues are clear and explicit, and we find no error.

■ Complaint is made that the court erred in permitting Dr. Matt Ware, who had charge of the patient during his sickness in November 1938, and again during the period from March 21, 1939, to the date of his death, to testify as an expert witness. This doctor was permitted to answer a hypothetical question. The appellant says:

"This evidence of Dr. Ware was highly improper and should not have been admitted; see Watson vs. Electric Co., 163 Iowa, 316, in which the Court said: 'If a physician has

had charge of the case, and knows the facts upon which to reach an intelligent opinion, it may be that a hypothetical question would be unnecessary and [possibly] improper; * * *'''

In the case of McDonald v. Robinson, 207 Iowa 1293, 1299, 224 N. W. 820, 823, 62 A. L. R. 1419, this court said:

"Dr. Ladd, who was appellee's attending physician, was permitted to answer hypothetical questions. These questions were propounded after he had described the injuries to appellee. It is urged that the admission of this testimony was error. To sustain this contention, counsel cites Watson v. Boone Elec. Co., 163 Iowa 316. The portion of the opinion in that case upon which appellant relies was a part of the discussion, and, at most, a mere suggestion of possible error. While the exact point was not raised, similar testimony was held proper in Miller v. Harrison County, 171 Iowa 270."

Thus, in view of our holding in the above-cited case, there was no error in permitting the attending doctor to testify.

Finally, it is argued that the court erred in admitting certain evidence of certain witnesses. We have given careful consideration to the alleged errors and hold that the court was right in admitting the evidence. This case was tried by able and distinguished counsel. It is submitted to this court upon elaborate briefs. Clearly, it was a question for the jury. It was properly submitted, and we find no error that would justify a reversal.

There was submitted with the case a motion by the appellee to dismiss the appeal. Same has been considered and it is hereby overruled.—Affirmed.

All JUSTICES concur.