Q. BELLE PICKEN, appellee, v. HAROLD L. PICKEN, appellant.

No. 49114.

(Reported in 80 N.W.2d 740)

February 5, 1957.

Bray, Carson & McCoy, of Oskaloosa, for appellant.

Bailey C. Webber, of Ottumwa, for appellee.

WENNERSTRUM, J.—Plaintiff brought an action for separate maintenance. The defendant filed an answer denying her allegations. He also filed a cross-petition for divorce wherein he alleged cruel and inhuman treatment on the part of the wife. Upon trial the court held for the plaintiff and entered a decree of separate maintenance, continued a receivership of the defendant's farm property which previously had been ordered, allowed attorney fees to plaintiff's and defendant's attorneys, and also provided for fees for the receiver. All of the allowances were taxed as part of the cost of the action. It also provided for the sale of defendant's property and an equal division of the proceeds. The defendant has appealed.

The plaintiff and defendant were married January 19, 1921, and lived together until February 11, 1954. On this last date the plaintiff's petition was filed and on the same day a temporary writ of injunction was obtained which prohibited the defendant from entering the home. A son and daughter had been born to the parties. At the time of the trial both of them were married and had homes of their own. They did not testify.

At the commencement of the trial the plaintiff was 58 years of age and the defendant was 56 years old. They had lived for 25 years on a 105-acre farm situated near Ottumwa, Iowa. The husband was the owner of this farm and the personal property on it. The land had been conveyed to him by his parents. Much of the difficulties between the parties developed by reason of the defendant's interest during the years in several women. On some of these occasions they were observed by the plaintiff and arguments developed.

The defendant-husband in this court presents the following grounds for reversal: (1) The plaintiff-wife is not entitled to separate maintenance in that the alleged acts of claimed violence were not proved and the testimony concerning them was uncorroborated. It is further maintained there is no proof of cruel and inhuman treatment such as to endanger her life. (2) There is no basis for the appointment of a receiver of defendant's

property. He apparently takes issue with the court's decree which granted to the wife one half of his property. This last contention is not noted as a ground for reversal.

On May 10, 1954, an application was made in this cause for the appointment of receiver to take charge of the farm and on May 20, 1954, the attorney who represented the defendant in the district court was so named. He thereafter leased the property to the defendant. This appointment would indicate such an arrangement was by agreement. The attorneys appearing for the defendant in this court did not represent him in the trial court. The original order appointing a receiver provided he should rent and operate the property as deemed proper and from the income pay the cost of the receivership, taxes, insurance, interest on the mortgage and other proper charges.

The taking of testimony in this case was commenced on April 4, 1955. This was over a year after the petition had been filed. The plaintiff was the only witness who testified at the April 1955 hearing. On April 5, 1955, the case was recessed to a date to be later determined. The reason for this adjournment is not shown but it can be assumed there was some effort made to adjust the differences between the parties. The trial was resumed on May 17, 1956. At this later hearing there was further testimony by the plaintiff and claimed supporting testimony of her contentions. The defendant was the only witness who testified relative to his petition for divorce and to contradict the testimony offered by the plaintiff and her witnesses.

During the course of the resumed hearing the following colloquy was had between the court and the interested attorneys:

"THE COURT: Did I understand from one of you, or both of you, that if the Court decides that one of these parties is either entitled to separate maintenance or to a divorce, that it is agreed or agreeable to the parties that the property be sold and the debts paid and divided equally between the parties? Is there such an understanding between them?

"MR. DEVITT: I think that is the only solution.

"MR. WEBBER: We made that proposal, so far as Mrs. Picken is concerned, we proposed that a decree of separate main-

tenance be entered and that the property then be sold, the indebtedness of the parties be paid, and the property divided equally between them, with Mrs. Picken getting some small amount of personal household goods that she took out.

"THE COURT: Is it also agreed that if the defendant prevails here on his cross-petition and is entitled to a divorce, that the same division of the property be made?

"MR. DEVITT: We agreed that the same division was proper, isn't that right?

"THE COURT: If that is true, then the issue is narrowed substantially, and that is why I am inquiring.

"MR. WEBBER: We are not agreeing to a divorce.

"* * *.

"THE COURT: I am going on the theory that the issue is, is Mrs. Picken entitled to separate-maintenance decree or is Mr. Picken entitled to a divorce decree, or are they both to blame and neither entitled to prevail.

"MR. WEBBER: I am perfectly willing that the issue be narrowed to that point, Your Honor.

"MR. DEVITT: I am too, Your Honor."

It is thus apparent there was no question then raised concerning continuance of the receivership or relative to the disposition of the property if either a decree of separate maintenance or a decree of divorce was entered by the court.

The defendant does not deny there were several incidents when he and the plaintiff were involved in some physical encounters. However his explanation of these occasions is that the injuries to the plaintiff were purely the result of an accident. In one case the plaintiff maintains she was struck by a portion of the telephone equipment and her lip was cut and two of her front teeth were knocked loose. It is the plaintiff's contention a party had called their home and when she answered the phone no one answered. The defendant then sought to get hold of the receiver. He admits there was a scuffle but denies he struck the plaintiff. We believe his testimony concerning this incident, even though he denies her claim of being struck, is sufficient corroboration of the plaintiff's version. There was another occasion when the plaintiff claims the defendant struck her in the eye

resulting in it becoming blackened. He does not deny that the plaintiff's eye was so affected but claims it was the result of his efforts to keep her from getting out of the car while it was in motion. Concerning this incident he testified:

"I pushed her out of my road and I don't suppose I was too gentle, no, after she invited me to hit her, that's what she wanted me to do, 'I want you to hit me', and kept getting her nose closer and closer and she started to jump out and I stopped, and I mean I stopped.

"Q. But the fact remains you did strike her?

"A. The fact remains I pushed her over on her side of the seat."

We deem this testimony also is corroborative of her testimony.

██ We also conclude that the plaintiff's claim relative to defendant's association with other women has been corroborated. His own testimony bears on this fact. A witness for the plaintiff testified to a conversation she had with the defendant relative to his association with one of the women referred to in the record. She stated: "I was speaking about (one of the women). Harold said he never would live with Belle again, that he didn't care for her and he didn't intend to ever go on with it. I asked him to give up this woman and he said no." This witness testified Mrs. Picken was naturally upset by reason of the defendant's actions and it made her sick. It was witness's opinion if the plaintiff continued to live with the defendant her health and life would be in danger.

 I. The appointment of a receiver is proper in a separate-maintenance action when the circumstances justify it and it has been agreed to by counsel for the parties. 42 C. J. S., Husband and Wife, section 625f(4), page 266; 27 Am. Jur., Husband and Wife, section 420, page 28. See also annotations, 29 A. L. R. 1396; 95 A. L. R. 902. There is no evidence in the record before this court relative to a hearing on the appointment of a receiver during the pendency of this action. The order of appointment merely recites the appearance of counsel for the parties and that the plaintiff had sustained the allegations of her petition and was entitled to have a receiver ap-

pointed. Inasmuch as the attorney for the defendant was named receiver it is apparent the appointment was in no way contested. Consequently we find no basis for error in the original appointment. Likewise there were no proceedings in the trial court wherein the authority of defendant's then attorney is questioned and no issue or controversy in the trial court was raised relative to such an appointment. An issue not raised in the trial cannot be presented for the first time on appeal. Neibert v. Stone, 247 Iowa 366, 367, 73 N.W.2d 763, 764, and cases cited. However, as bearing on the attorney's authority to bind his client, attention is called to Shores Co. v. Iowa Chemical Co., 222 Iowa 347, 350, 351, 268 N.W. 581, 106 A. L. R. 198.

II. Although it is not noted as a ground for reversal the defendant in this court comments on the trial court providing for a lump sum settlement in favor of the plaintiff. We have approved of gross sum settlements in separate-maintenance actions under particular circumstances. We so held in Schultz v. Brewer, 245 Iowa 240, 248, 61 N.W.2d 446. We therein reviewed our cases pertaining to this question. In the light of the agreement made by the parties through their counsel in open court, and, further because of the difficulty in getting payments of temporary support money during the period the litigation was pending, we are convinced the provision for a lump sum settlement for the plaintiff as provided in the decree was proper. See also 42 C. J. S., Husband and Wife, section 624(b), page 253.

III. A person seeking a decree of separate maintenance on grounds of cruel and inhuman treatment must sustain the allegations of the petition by evidence which would sustain a decree of divorce if it had been sought. Shors v. Shors, 133 Iowa 22, 110 N.W. 16; Leonard v. Leonard, 174 Iowa 734, 156 N.W. 803; Brown v. Brown, 232 Iowa 1265, 8 N.W.2d 414; Avery v. Avery, 236 Iowa 9, 17 N.W.2d 820, and cases cited.

We are convinced the defendant was guilty of cruel and inhuman treatment toward the plaintiff. The question then remains whether this treatment was of such a nature as to warrant our holding the life of the plaintiff was endangered. It is true the plaintiff testified: "I became reconciled to what I had to bear and I didn't let it get on my nerves. I wasn't sick

or anything. It was a mental worry." She did testify to the fact she cried a lot and spent sleepless nights and went to a doctor who gave her some tablets for her nerves. We have held mental as well as physical cruelty can be the basis of a decree of divorce. No citations of authority are necessary. Under the authorities mental as well as physical cruelty may justify a decree of separate maintenance. Although the testimony is not too positive, we believe it is of a sufficient nature and character to warrant our holding the defendant's conduct towards his wife would endanger her life.

The decree of the trial court is affirmed.—Affirmed.

BLISS, C. J., and GARFIELD, OLIVER, SMITH, THOMPSON, LARSON, and PETERSON, JJ., concur.

HAYS, J., dissents.