MAXINE JOHNSON, appellee, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, appellant.

No. 50629.

1220

June 12, 1962.

Lynch, Dallas, Smith & Harman, of Cedar Rapids, for appellant.

Stanley L. Haynes and Breese & Cornwell, all of Mason City, for appellee.

PETERSON, J.—This is an action to recover under a life insurance policy issued by defendant upon the life of Elvin G.

Johnson, deceased, husband of plaintiff. He died September 20, 1959. Plaintiff alleged the insured died as a direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes. The policy had been issued to decedent on March 18, 1929, and provided for payment of $2500 to plaintiff-beneficiary on the death of the insured. Defendant paid the $2500, but refused to pay double indemnity, alleging death did not occur as above stated, but was the result of a heart attack. The case was submitted to the jury and verdict was rendered in favor of plaintiff. Defendant appeals.

I. The insured, Elvin G. Johnson, at time of death, was 57 years of age. He had been working for Ray Pauley Company of Mason City since 1928, and was general superintendent at the time of his death. Pauley Company does sheet metal work, installs furnaces, and designs, makes and sells air conditioning units. In March of 1953 he went to see Dr. Ralph E. Smiley, specialist in internal medicine, for a general checkup. Doctor Smiley asked him to return in April, and at that time he found the blood pressure considerably higher than in March. Doctor Smiley gave Mr. Johnson some medication for this condition and saw him regularly from time to time for the next six years, or until February 13, 1959. During all six years Mr. Johnson was working regularly. On said date he developed some vomiting and a pain in his chest. The doctor brought him to the hospital and upon examination found his difficulty was coronary thrombosis.

The insured was hospitalized from February 13 until February 27. Doctor Smiley gave him medicine to prevent formation of clots in his heart muscle. After leaving the hospital he rested at home until May 12, when he started working for half days. In July he returned to work full time and performed all his duties as superintendent. The only advice given him by the doctor as to any exercise was that he advised him not to play golf.

On Saturday evening, September 19, 1959, Mr. and Mrs. Johnson broiled some steaks, watched TV and went to bed reasonably early. On Sunday morning, September 20, the insured arose about 8:30, shaved and ate breakfast. It was a nice day and he told his wife he thought he would go out to the Country

Club and see his "buddies". He left home about ten o'clock. After leaving home he stopped by the shop and visited for about ten minutes with Gunner Anderson, the shop foreman. He then drove out on what was known as Taft Street toward the Country Club. He met and passed Mr. Franklin Pitkin, an employee at Pauley Company, who was on his way to church. Mr. Pitkin said Mr. Johnson was driving from 30 to 35 miles per hour. A little over a block from the point where Pitkin saw him, the insured's car left the highway on the west side of the road and collided with a cottonwood tree near the Country House restaurant. Mr. William J. Rease, the proprietor of the Country House, heard the noise and came out to see what happened. The weather was clear. Mrs. Rease called the sheriff. Gunner Anderson heard of the accident and drove to the scene. Mr. Johnson was still in the front seat, but by that time was dead. Mr. W. D. Kemmerer, a member of the Highway Patrol, arrived quickly, as did the sheriff. They both testified they saw no skid marks from the place where the car left the paved highway to the tree. The distance was approximately 68 feet.

At the request of Dr. J. E. Christopherson, the coroner for Cerro Gordo County, Dr. Paul Herbert Potter, a pathologist practicing in Mason City, performed an autopsy on the body of Mr. Johnson.

Doctor Potter testified Mr. Johnson died from injuries suffered as a result of the collision with the tree, and not from heart trouble.

Dr. L. W. Swanson was called as a witness for defendant and testified in his opinion Mr. Johnson died from heart ailment.

We will discuss Doctor Potter's and Doctor Swanson's testimony in detail in the next division.

Insofar as applicable to the double indemnity provision of the policy, it provides as follows:

"The Double Indemnity will be payable upon receipt of due proof that the insured died . . . . . . as a direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes, . . . . . . . provided that the Double Indemnity shall not be payable if death resulted . . . directly or indirectly from disease or bodily or mental infirmity."

II. The first alleged error assigned by defendant was that the trial court erred in overruling defendant's motion for directed verdict. It was the position of defendant that plaintiff's death resulted either directly or indirectly from heart disease and was not the direct result of bodily injury effected solely though external, violent and accidental means, and that the evidence established this fact as a matter of law.

It has been stated in numerous decisions of this court that when the question of directing a verdict in favor of defendant comes before the trial court, the court must consider the evidence in the light most favorable to plaintiff. Comfort v. Continental Casualty Co., 239 Iowa 1206, 34 N.W.2d 588; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275.

Appellant cites eight cases in support of this alleged error. They are all Federal cases, and the argument does not disclose any of the cases as being from Iowa. We have developed a policy in many decisions on the question involved in this case which is distinct in Iowa. We will follow, in the case at bar, the strictly developed Iowa policy.

Doctor Potter testified as to the autopsy, as follows:

"Q. As a result of your examination, did you arrive at some conclusion as to the probable cause of Elvin Johnson's death? A. I felt that the major cause was this fracture dislocation of the upper vertebra in the neck crushing the spinal cord, and of course, also major contributing factors, the tear in the trachea [windpipe] and these two tears in the aorta [big artery from the heart]. (Explanations ours.)

"Q. Any one of which would be sufficient to cause death? A. Any in themselves would be sufficient to cause death.

"Q. Now, what did you do, Doctor, with reference to determining whether or not Mr. Johnson might have suffered a coronary occlusion prior to the accident? A. The heart muscle is supplied by small arteries known as coronary arteries and I examined these coronary arteries by making incisions at short intervals so that I could then see the cross section of the artery, made them about one millimeter intervals and examined the cross sections. Then we make incisions into the heart muscle itself to see if there has been any damage to the muscle itself, and changes. * * *

"Q. And what was your finding with reference to whether or not the clots which you observed in the coronary arteries of Elvin Johnson were antemortem or postmortem clots? A. I felt, after the examination, they were postmortem because they didn't have this organization that one would expect from premortem clot.

"Q. It was your opinion that occurred after death rather than before? A. Yes. * * *

"Q. Did you find any evidence, Doctor, that Mr. Johnson had breathed or attempted to breathe after the accident as to when breathing stopped? A. This bubbling, so called, or crepitation in the neck and chest is what one finds when air is forced into tissue and expanded outward from this—tear in the trachea so I felt he had attempted to breathe and forced air into this loose tissue.

"Q. That is, after the trachea had been torn? A. Yes."

Doctor Potter also testified, on cross-examination:

"Q. * * * This hypothetical question that I have asked you, Doctor, based on all those facts and assuming there isn't any question in your mind but what it would be possible for Mr. Johnson to have had some acute coronary episode that caused his vehicle to leave the highway in that fashion, isn't that correct? A. Yes, it is possible.

"Q. And as a matter of fact, it is likely, isn't that right? A. *That I would have difficulty.* I can say that it is possible, *I hate to go further.* (Emphasis ours.)

"Q. Well, now Doctor, there is no other *medical* explanation that you know of that you can give for his automobile having left the road in that fashion? A. No, I found no other *medical* explanation. (Emphasis ours.) * * *

"My autopsy concludes with, that medical cause of death was due to trauma, that is, blows that he received when the car crashed into the tree."

Dr. L. W. Swanson, a physician in Mason City, specializing in internal medicine, was called as a witness by defendant. After defendant's attorney had asked a lengthy hypothetical question of Doctor Swanson his final statement as to the question and the answer were as follows: "* * * is it your opinion that there is a reasonable probability that Mr. Johnson lost his physical ability

through lack of consciousness, pain or other symptoms resulting from heart disease that caused him to lose control and collide with the tree? A. In the absence of any medical evidence to explain it otherwise, I would say, yes."

Doctor Swanson testified that he was not present at the autopsy and never viewed the body of Mr. Johnson after his death.

Doctor Swanson testified in a very frank and common-sense manner under cross-examination as follows:

"A lot of people have heart trouble and sclerosis of the coronary arteries and live for a considerable length of time, and some may run off the road and still not have heart trouble. It is certainly possible that the cause of that man driving off the road could have been any one of a number of things. He might have dropped a lighted cigarette on the car floor and while reaching down, turned off. He might have had his attention diverted while viewing some farmer combining beans on the other side of the road and thereby momentarily diverted his attention. He might momentarily have lost control by a multitude of causes."

In an action involving an accident insurance policy, or the question of double indemnity on a regular policy in case of accidental death, where the evidence is such that reasonable minds might differ, the question of whether or not the injuries were accidental is one for the jury. Lickleider v. Iowa State Traveling Men's Assn., 184 Iowa 423, 166 N.W. 363, 368, 3 A. L. R. 1295; Miser v. Iowa State Traveling Men's Assn., 223 Iowa 662, 273 N.W. 155; Robertson v. Mutual Life Insurance Co., 232 Iowa 743, 6 N.W.2d 153; Watters v. Iowa State Traveling Men's Assn., 246 Iowa 770, 69 N.W.2d 1.

In the case of Lickleider v. Iowa State Traveling Men's Assn., supra, one Bert A. Dunbar was insured under defendant's regular policy. He was changing a tire on his car and the casing came off with a jerk and struck him violently. He became very ill and about an hour later died. Three doctors examined him. Two doctors held that he was afflicted with abnormal arteriosclerosis. The third doctor testified that he found no more arteriosclerosis than usual in a man of his size and age and that the blood clot from which he died was due to the injury. The trial court directed a verdict. This court reversed. The court stated: "As

we have already remarked, there was a conflict of expert evidence upon the question whether Dunbar died of arterial disease, or of bodily injury, and this being the case, a verdict or finding that his death was the result of injury would have support in the record. * * * This conclusively negatives the right of defendant to an instructed verdict. * * *."

The case of Watters v. Iowa State Traveling Men's Assn., supra, is similar in many respects to the case at bar. Dr. Phil G. Watters was a very active medical practitioner in Des Moines. On December 23, 1950, he was admitted to the hospital as a patient. He was suffering from a serious heart ailment. He was dismissed from the hospital on January 11, 1951. He went back to his work on February 1, 1951. He worked regularly until November 25, 1952. On that day he spent a quiet evening at home and about 9:30 he stepped out through the door to let his dog out. There was snow in the opening of the door. He slipped and fell. When he came back his wife testified he was in great pain. He died December 12, 1952.

In this case, as in the case at bar, the company resisted payment on the basis that his death was the result of the heart condition and not the result of the fall. The doctor's witnesses differed in their opinion concerning the matter. The trial court and this court said there was substantial evidence that Doctor Watters' fall was accidental. We quote from the decision (page 780 of 246 Iowa): "The district court necessarily thought that the existence of the factual matters inherent in plaintiff's burden of proof was for the determination of the jury, and denied defendant's motion to direct the verdict. *Implicit in the verdict of the jury is its finding that plaintiff established all facts essential to a judgment* on her cause of action. We agree with the ruling on the motion and with the verdict of the jury." (Emphasis ours.)

Appellant's counsel contends the Watters case is not a precedent for the case at bar because there is no question but what he slipped and fell on the snow, whereas in the case at bar there is a question about the reason for Mr. Johnson losing control of his car. As to the question of submission of the case to the jury this distinction is not decisive.

Doctor Potter's testimony negatives death from heart condi-

tion, causing Mr. Johnson to lose control of his car, or to die from such condition.

There is another element in the evidence which the jury had a right to take into consideration. The witnesses, Gunner Anderson, shop foreman at Pauley Company; Robert E. Johnson, son of decedent, who also worked at Pauley Company; John Pauley, president of the company; and Maxine Johnson, plaintiff, all testified Elvin Johnson worked regularly as superintendent of Pauley Company from July 1959 until September 20, 1959, date of his death. He performed all services during said time in the same manner as they had been performed by him for many years.

III. Appellant contends the proof of death submitted by plaintiff constituted prima facie proof that the insured's death resulted directly or indirectly from disease, and the trial court erred in instructing the jury the proof of loss submitted by plaintiff was sufficient as a matter of law.

The policy provided as to proof as follows: "* * * upon receipt of due proof that such death resulted from bodily injury effected solely through external, violent and accidental means, and occurred within ninety days after such injury all upon the conditions set forth in Section 1 * * *."

Plaintiff filed such proof about September 30, 1959. The proof blank, furnished by defendant, was called "REQUEST FOR PAYMENT OF DEATH BENEFIT." It consists of two pages. The first page was signed by plaintiff. Question 6 was: "Principal cause of death. A. Driving car on highway which ran off road and struck a tree." Question 7 was "When did health of insured first begin to be affected? A. Had a heart attack February 13, 1959."

The second page was prepared by Dr. J. E. Christopherson, coroner. One question was "Cause of Death". A. "Fracture dislocation, cervical spine." Another question was "Date of First Attendance in Last Illness." A. "After death, in capacity of coroner." Another question was "If Death was due to Accident, Specify Which:" A. " 'Accident': Deceased had extensive coronary sclerosis, probably was having a heart attack (coronary thrombosis), lost control of car and crashed into tree." Next question "Was an Autopsy Performed?" A. "Yes. Q. If so by

whom and with what conclusion? A. Dr. P. H. Potter. Cause of death is in accordance with findings at autopsy."

Doctor Potter, as heretofore stated in his testimony, said the autopsy disclosed death was due to accidental means, and not to disease. By pursuing the statement in the proof, defendant could easily and quickly discover this fact.

■ ■ The primary purpose of a proof of loss required by any insurance company is to advise the company of the fact that the insured has departed this life, and, in general language, give the cause of such death. As a proof is ordinarily sent in promptly after the death of the insured it is not essential that all details of the death of insured be shown. It is even possible that some of the details in connection with the proof may be an opinion of a doctor contrary to what the testimony in the case later discloses. Such condition is not fatal to a claimant's cause of action. Robertson v. Mutual Life Insurance Co., 232 Iowa 743, 6 N.W.2d 153; Schoeman v. Loyal Protective Life Insurance Co., 239 Iowa 664, 32 N.W.2d 212; Garden v. New England Mutual Life Insurance Co., 218 Iowa 1094, 1098, 254 N.W. 287, 289; Kundiger v. Metropolitan Life Insurance Co., 218 Minn. 273, 15 N.W.2d 487.

■ If the insurance company is not satisfied with the information given in the proof of death it is the obligation of such insurance company to request additional information from the claimant. Dawson v. Bankers' Life Co., 216 Iowa 586, 247 N.W. 279; Kundiger v. Metropolitan Life Insurance Co., supra.

■ Appellant's principal objection to the proof of death is that the court instructed the jury that the proof of death in the instant case was sufficient under the provisions of the policy. We have passed on this question in Robertson v. Mutual Life Insurance Co., supra, in the following language (page 757 of 232 Iowa): "The question of whether or not due proof was furnished, there being no dispute of any kind in regard to the facts, was a question of law for the court."

■ ■ In Schoeman v. Loyal Protective Life Insurance Co., supra, this court said: "The function of proofs of loss is to advise the insurer of the essential facts upon which its liability depends. Generally speaking, provisions for the furnishing of such proofs will be liberally construed in favor of the insured. * * * The insurer may not arbitrarily demand any particular

form of proofs and is not the sole judge of their sufficiency." Three cases and 109 A. L. R. 825 cited.

29A Am. Jur., Insurance, section 1410, states: "Where an accident policy requires a notice of accident giving 'full particulars,' all that is required are particulars sufficient to enable the insurer intelligently to prosecute such inquiry, and not all the details of the accident."

The proof of death did not constitute prima facie proof that decedent died as a result of disease. Doctor Christopherson, coroner, who had never seen or treated Mr. Johnson, and who was not present at the autopsy, made contradictory statements in his part of the proof. First Doctor Christopherson ventured the opinion "probably was having a heart attack (coronary thrombosis), lost control of car and crashed into tree." Then, second, he said autopsy was performed by "Dr. P. H. Potter. Cause of death is in accordance with *findings at autopsy*." Such autopsy finding was contrary to Doctor Christopherson's opinion. (Emphasis ours.)

IV. Appellant contends the trial court erred in Instruction No. 5 by instructing the jury that insured's injuries were effected solely through external, violent and accidental means.

There are eight paragraphs in Instruction No. 5. Appellant refers to only one paragraph. The objection raised to the third paragraph in the instruction is not effective because the statement of the court is "* * * that as a result of such accident he suffered serious bodily injuries *capable* of producing death, etc." (Emphasis ours.) Furthermore, the objection raised is answered in the next paragraph, when the trial court said: "The sole question for your determination in this case is whether or not the death of Elvin G. Johnson was caused by these injuries [referring back to paragraph of which appellant complains] independently and exclusively of other causes, and was not caused directly or indirectly from disease or bodily infirmity."

This is a good example of the importance of the principle we have so often stated. It is not only important that all the paragraphs of an instruction are taken into consideration, but that all instructions are given consideration. Ballain v. Brazelton, 221 Iowa 806, 266 N.W. 522; Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291; Bryan v. Iowa State Highway Commis-

sion, 251 Iowa 1093, 104 N.W.2d 562; Perry v. Eblen, 250 Iowa 1338, 98 N.W.2d 832; In re Estate of Lundgren, 250 Iowa 1233, 98 N.W.2d 839.

V. Appellant assigns as error the fact that the trial court did not give an instruction requested by defendant.

The substance of all pertinent and competent parts of the requested instruction was covered in the instructions given to the jury, although perhaps they were given in a more impartial and neutral wording.

This alleged error does not justify reversal.

VI. Appellant alleges it was error on the part of the trial court not to submit the interrogatories requested by appellant.

Rule 206, Rules of Civil Procedure, provides in the part pertinent to the case at bar: "The jury in any case in which it renders a general verdict may be required by the court, and must be so required on the request of any party to the action, to find specially upon any particular questions of fact, to be stated to it in writing, * * *. The instructions shall be such as will enable the jury to answer the interrogatories and return the verdict. * * *."

Appellant requested three interrogatories. The court submitted interrogatories 1 and 2 substantially as to wording, and completely as to meaning, as requested by appellant.

The court refused to submit the following interrogatory: "3. What fact or facts do you find which caused Elvin G. Johnson's vehicle to collide with the tree?"

The trial court was correct in refusing to submit the interrogatory for two reasons: First, the answer to such interrogatory might involve an extended statement or treatise by the jury as to the merits of the case. Second, the question requested by appellant inheres in the case itself, and the decision by the jury in the case answers the question.

The trial court is not obligated to submit questions which are not proper or which are fully covered by the instructions submitted. Watters v. Iowa State Traveling Men's Assn., supra; Nicholson v. City of Des Moines, 246 Iowa 318, 67 N.W.2d 533; Korf v. Fleming, 239 Iowa 501, 32 N.W.2d 85, 3 A. L. R.2d 270; Main v. Sheston-Luxor Cab Co., 249 Iowa 973, 89 N.W.2d **865.**

In Main v. Sheston-Luxor Cab Co., supra, this court in failing to approve a question said: "This [RCP 206] clearly contemplates a proper question. * * * The question requested * * * does not necessarily call for an affirmative or a negative answer."

In the Watters case, supra (page 790 of 246 Iowa), the court said: "In its requested Instruction No. 2, defendant asked that the jury be told the burden was on the plaintiff to prove the insured came to his death by bodily injuries received by an accidental fall, and if the jury found the fall was caused by disease, the verdict should be for defendant. These matters were fully covered in the court's instructions, and the court rightly refused the requested instruction."

VII. The final contention appellant predicates as error is that the trial court failed to instruct on the question of circumstantial evidence. This contention was not raised by appellant in the trial court and that fact constitutes one reason why we cannot reverse on the alleged error. Neibert v. Stone, 247 Iowa 366, 367, 368, 73 N.W.2d 763, 764, and citations; Picken v. Picken, 248 Iowa 416, 422, 80 N.W.2d 740, 743; In re Estate of Lundgren, supra.

Furthermore, the trial court in its instructions gave proper attention to such circumstances as needed the attention of the jury. Under such conditions no further instruction is needed. LaSell v. Tri-States Theatre Corp., 235 Iowa 492, 17 N.W.2d 89; Morse v. Century Cab Co., 230 Iowa 443, 449, 297 N.W. 877, 134 A. L. R. 635.

In Morse v. Century Cab Co., supra, the court said: "We think that an examination of all the instructions indicates that the jury were fully instructed and there was no request for any more specific instruction." To the same effect, see Johnson v. Kinney, 232 Iowa 1016, 7 N.W.2d 188, 144 A. L. R. 997.

The trial court properly overruled the motion to direct in favor of defendant; no reversible error appears in the other alleged errors. The case is affirmed.—Affirmed.

All JUSTICES concur.